Damien CAPELLO, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 3–87–106–CR.

Court of Appeals of Texas,
Austin.

Aug. 9, 1989.

Charles R. Kimbrough, Lockhart, for appellant.

Jeffrey L. Van Horn, Crim. Dist. Atty., Lockhart, for appellee.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

ABOUSSIE, Justice.

A jury found appellant guilty of aggravated sexual assault under Tex.Pen.Code Ann. § 22.021(a)(2) (1989) and assessed punishment at twenty-four years confinement in the Texas Department of Corrections. The trial court rendered judgment in accordance with the verdict, along with a finding of use of a deadly weapon. We will reform the judgment of conviction and, as reformed, affirm.

The offense occurred in the early morning of June 9, 1986, in Lockhart, Caldwell County, Texas. The assailant entered a home where the victim cared for an invalid woman, awakened the victim, threatened her with a knife, and sexually assaulted her.

The assailant remained very close to the victim for at least an hour. The two conversed for fifteen to twenty minutes and then he forced her to engage in sexual intercourse for thirty minutes. During the attack, the two were in a lamp-lit bedroom and on a porch lit by moonlight and a nearby street light. The victim saw her assailant's face throughout the incident. Before he left, the assailant told the victim to "take a good look" at him, which she did, since she was going to report him to the police. The victim had never seen her attacker before the incident and did not know his name.

The victim's description of her assailant never varied, and it matched appellant's physical characteristics. She gave an initial, detailed description of her assailant to police at 4:00 a.m. immediately following the assault. She looked through police "mug-books" later that day, but failed to identify her assailant from among the several hundred photographs which she testified "all began to look alike." The officers could not verify whether appellant's photograph was in any of the books through which the victim looked, as photographs are added to and removed from the books daily and appellant was not then a suspect.

Several days after her attack, the victim saw her assailant sitting on the front porch of a home a few blocks from where she had been assaulted. One week later, she saw him walking along a road near that home. On a third occasion, the victim again saw her assailant on the same porch where she had seen him earlier. The victim reported these three events to the police. Testimony outside the jury's presence revealed that appellant lived at the home where the victim twice saw her assailant. Neither party offered evidence of these sightings before the jury.

On June 16, 1986, after the victim first saw appellant at his home, a police artist made a composite drawing from the victim's description of her attacker. A police

officer recognized appellant as the person depicted in the composite, but he did not tell the victim his identity.

The officer then showed the victim a display of photographs of six males, similar in appearance and age, including appellant. The victim independently selected appellant's photograph and told the officers that she "wouldn't positively say" that the person in the photograph was her assailant, "but he looked very, very close." Although she was "pretty sure," she "wouldn't absolutely say without a doubt." Since the police failed to preserve the array, appellant speculates it may have been "overtly" suggestive and, *if* so, it *probably* influenced the witness's later identification of appellant both at a lineup and at trial. Appellant offered no proof that the procedure was suggestive. We note that the witness resisted any alleged suggestion, as she declined to positively identify a suspect at that time. Appellant concedes that failure to preserve the photo array does not prevent the witness from making an in-court identification, so long as the victim's trial testimony is of independent origin. *Van Byrd v. State*, 605 S.W.2d 265, 270 (Tex.Cr.App.1980). Neither appellant nor the state introduced evidence of this array before the jury.

During a December 3 police lineup, the victim unequivocally identified appellant as her assailant. When appellant walked into the room, even before all the participants had entered, the victim identified him immediately and positively. The trial court heard uncontroverted evidence that no one influenced the victim's selection in any way.

■ The police held the December 3 lineup, after appellant's indictment, in the absence of legal counsel, and without a waiver of counsel by the accused. An accused cannot be subjected to a pre-trial lineup in the absence of counsel under these circumstances without violating his right to counsel under the Sixth Amendment of the United States Constitution. *See Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Thompson v. State*, 480 S.W.2d 624 (Tex.Cr.App.1972); *Martinez v. State*, 437 S.W.2d 842 (Tex.Cr. App.1969); U.S. Const. amend. VI. A witness's testimony that she identified a defendant at an illegally held lineup is inadmissible at trial, *Gilbert*, 388 U.S. at 277, 87 S.Ct. at 1958; *Thompson*, 480 S.W.2d at 626, and cannot be used instead of, or to bolster, an in-court identification, *Martinez*, 437 S.W.2d at 846. The State did not offer evidence regarding the the victim's identification of appellant at the lineup.

■ During trial, the victim testified before the jury and identified appellant. A victim who has previously identified a defendant at an illegally staged lineup may identify the accused at trial if the State has established by clear and convincing evidence that the testimony is based upon the witness's observations of independent origin, purged of any taint of the illegal pretrial confrontation. *Gilbert*, 388 U.S. at 272, 87 S.Ct. at 1956; *Wade*, 388 U.S. at 241, 87 S.Ct. at 1939; *Thompson*, 480 S.W.2d at 627; *Martinez*, 437 S.W.2d at 846.

Appellant filed a motion to suppress evidence which asserted the following:

Defendant respectfully requests the Court to suppress the following items seized as evidence in this cause:

\*   \*   \*   \*   \*   \*

Item 3. Any *statement, written or oral, by Defendant,* or action done by Defendant, at or subsequent to his apprehension by law enforcement officers.

Item 4. All testimony of law enforcement officers, or agents thereof, as to the *seizure of any tangible, identification, or line-up evidence* in this cause.

\*   \*   \*   \*   \*   \*

Item 6. All *identification or line-up evidence* obtained by law enforcement officers, or agents thereof.

*In support of this motion, Defendant would show that all of the items noted above were seized by law enforcement officers, or agents thereof, as a result of an illegal detention, arrest, and search of Defendant,* and in violation of appro-

priate constitutional and statutory authority ... U.S. CONST. amends. IV, V, VI, XIV; TEX. CONST. art. I, §§ 9, 10, 19; and TEX.CODE CRIM.PRO.ANN. arts. 1.04, 1.05, 38.08, 38.22, 38.23 [emphasis added].

The court held a hearing on the motion outside the jury's presence to consider (1) whether appellant gave voluntary written consent to the search and (2) whether the basis for the victim's identification of appellant at the time of trial was of independent origin.

As to the first issue, we note that appellant never contended below, and does not complain on appeal, that the police illegally detained or arrested him. Appellant disputed below only the taking of samples from his person for testing. The State conceded that the police did not obtain these samples by a warrant, but by appellant's written consent, and the only issue is whether appellant voluntarily consented. On appeal, appellant does not attack the validity of the search or its fruits, but instead attacks for the first time the written consent form itself as an improperly admitted confession.

As to the second issue, the State conceded below that the lineup constituted a violation of appellant's sixth amendment right to counsel and, as such, was an illegal pre-trial procedure. The State denied, however, that this illegal procedure restricted the eyewitness's ability to identify appellant before the jury.

Appellant argued below, but not on appeal, that he was entitled to counsel at the time police showed the victim photographs and that the photograph array must have been suggestive, since the State failed to prove otherwise. Appellant also argued below that the in-court identification should be suppressed because the lineup was illegal and suggestive, the witness may have been influenced by the "illegal" photograph array, and the State failed to prove the resulting taint of those procedures was removed. Appellant cross-examined the State's witnesses, but did not offer evidence or testify himself.

The State offered evidence that neither the photograph array nor the lineup was suggestive, that no one influenced the victim at any stage of the proceedings, and that the witness recognized appellant from the attack. The State also offered evidence that an officer requested appellant's voluntary consent for the taking of body specimens; that he first administered appellant the *Miranda* warnings; and that he typed a consent form which appellant read and voluntarily signed, without coercion or threats.

The court, after hearing extensive testimony, found that (1) appellant's consent was admissible and (2) that the victim could identify appellant at trial.

■ In his motion to suppress, and in virtually all of his points of error, appellant relies upon a string of citations, including both federal and state constitutional and statutory references, without briefing and analyzing each one separately and fully. On this basis, the points are multifarious and may be overruled. *See McCambridge v. State,* 712 S.W.2d 499, 502 (Tex.Cr.App. 1986). Nevertheless, we will address what we perceive to be appellant's complaints, and hold that none of the alleged errors require reversal.

In his first two points of error, appellant complains that the trial court erred in overruling his motion to suppress any in-court identification of him by the victim and in admitting her testimony.

The first issue as joined by the parties is whether the witness's in-court identification of appellant was the product of the pre-trial proceedings or was of independent origin. On appeal, as at the hearing, appellant cites as authority *Martinez,* 437 S.W.2d 842, as well as *Thompson,* 480 S.W.2d 624. These cases follow *Wade,* 388 U.S. 218, 87 S.Ct. 1926, and *Gilbert,* 388 U.S. 263, 87 S.Ct. 1951, all of which deal with illegal pre-trial proceedings (such as when a lineup is held in the absence of counsel), which may not otherwise be suggestive.

■ If the State showed that the witness based her in-court identification upon ob-

servations at the time of the offense, apart from any pre-trial identification, then it was admissible, even though the lineup, for example, may have been illegal. *Wade*, 388 U.S. at 240, 87 S.Ct. at 1939; *Thompson*, 480 S.W.2d at 627; *see also Garcia v. State*, 626 S.W.2d 46 (Tex.Cr.App.1981). The test to determine whether the evidence proffered is of independent origin is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wade*, 388 U.S. at 241, 87 S.Ct. at 1939. The following factors set out in *Wade* guide our analysis: (1) the victim's opportunity to observe the criminal act; (2) the existence of a discrepancy between the description prior to the lineup and appellant's actual physical appearance; (3) identification prior to the lineup of another person; (4) identification by picture of appellant prior to the lineup; (5) a failure to identify appellant on a prior occasion; and (6) the lapse of time between the alleged act and the lineup identification. *Id.; Thompson*, 480 S.W.2d at 627; *Martinez*, 437 S.W.2d at 846.

█ In evaluating these factors, we find that: (1) the victim observed appellant and saw his face in sufficient light at close range for an hour on the night of the assault, and saw him three times after the assault; (2) no discrepancies exist between the description prior to any pre-trial procedure and appellant's actual appearance, other than a haircut and a facial tattoo which the evidence showed appellant acquired after June 16; (3) the victim never identified any other person as her assailant; (4) the victim selected a photograph of appellant from the June 16 photograph display as being very similar in appearance to her assailant, and she furnished information for a composite drawing so like appellant that a police officer identified appellant from it. We note also that: (5) the victim's selection of appellant from the photograph display and her unwillingness to identify him positively at that time cannot be deemed a complete failure to identify him on a prior occasion, and (6) although

six months passed between the attack and the lineup identification, the descriptions and drawings made immediately following the assault were consistent with appellant's description. The victim testified that she saw appellant on three occasions near where the assault occurred and at the lineup, and recognized him from the night of the attack. She denied any doubt that appellant was her assailant. The trial court had sufficient proof to find, from clear and convincing evidence, that the victim arrived at her by testimony means sufficiently distinguishable from any pre-trial exposure, and that her in-court identification was of untainted, independent origin.

█ Appellant further argues that the victim's testimony should have been excluded because the manner in which the pre-trial proceedings were conducted denied him due process, because they were unconstitutionally suggestive, and thus tainted the reliability of her testimony. Appellant must meet a two-step analysis for evaluating this complaint. First, the pre-trial event must be unnecessarily suggestive, and, second, it must give rise to a "very substantial likelihood of irreparable misidentification." *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Cantu v. State*, 738 S.W.2d 249 (Tex.Cr.App.1987); *Jackson v. State*, 657 S.W.2d 123 (Tex.Cr. App.1983); *Garcia*, 626 S.W.2d 46. Though the lineup was illegal, it was not necessarily impermissibly suggestive. Suggestiveness must be determined by the circumstances of each case. *Cantu*, 738 S.W.2d at 252. Further, even an impermissibly suggestive pre-trial procedure does not necessarily render in-court identification inadmissible, so long as the record clearly reflects that the witness's prior observation of the accused was sufficient to serve as independent origin for the trial testimony. *Coleman v. Alabama*, 399 U.S. 1 (1970); *Jackson*, 657 S.W.2d 123; *see Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

The trial court must examine the totality of the circumstances to determine the reliability of the trial testimony sought to be excluded. *Neil,* 409 U.S. 188, 93 S.Ct. 375; *Stovall,* 388 U.S. 293, 87 S.Ct. 1967; *Cantu,* 738 S.W.2d at 251; *Jackson,* 657 S.W.2d at 128. In assessing reliability and the likelihood of misidentification, the trial court must weigh the following factors against the corrupting effect of a suggestive pre-trial identification procedure: (1) the opportunity of the witness to view the criminal at the scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the accused; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil,* 409 U.S. at 199, 93 S.Ct. at 382. These factors are similar to those set out in *Wade,* 388 U.S. 218, 87 S.Ct. at 1928.

Appellant claims the December 3 lineup was suggestive because he was the only person wearing high-topped tennis shoes. A photograph of the lineup reveals that the other men wore their pants with the cuffs over the top of their shoes, while appellant, for a reason never explained, had tucked the cuffs of his pants into the tops of his black shoes. The victim's initial description to police included the fact that her attacker wore old, worn high-topped tennis shoes, different from the ones appellant wore at the lineup. The victim insisted that she selected appellant before she noticed his shoes, and placed no importance on them, despite the fact that she commented on the shoes at the conclusion of the lineup. We do not find appellant's shoes to have rendered the confrontation unnecessarily suggestive. In the absence of any suggestive and unnecessary police procedure, we need not consider the factors set forth in *Neil. Garcia,* 626 S.W.2d at 54. Nevertheless, without restating all the evidence already set forth above, and considering these factors in view of the totality of the facts and circumstances in this case, we further find that such procedure, assuming it was unnecessarily suggestive, did not give rise to a "very substantial likelihood of irreparable misidentification." *See Neil,* 409 U.S. 188, 93 S.Ct. at 377. The trial court heard

clear and convincing evidence from which it concluded, as do we, that the victim derived her unequivocal identification of appellant at trial from her observations of him at the time of the offense and independent of any pre-trial confrontation. Appellant's first and second points of error are overruled.

Appellant complains in a third point of error that the evidence is insufficient to sustain his conviction in the absence of the victim's testimony. Having found that the identification was admissible, we overrule appellant's third point of error. *See also Collins v. State,* 602 S.W.2d 537 (Tex.Civ. App.1989).

In several points of error, appellant complains that the trial court erred by overruling his motion to suppress Exhibit 11, his written consent to search; by admitting Exhibit 11; by failing to hold a *Jackson v. Denno* hearing and file the required findings; and by refusing to charge the jury concerning the voluntary nature of his statement and the legality of the evidence thereby obtained.

The only objection appellant raised before the trial court regarding the admission of Exhibit 11 was to restate his reliance upon the argument and authorities in his motion to suppress. Although appellant includes article 38.22 in his string of citations supporting his motion, appellant did not complain to the trial court that the consent form was a confession subject to the procedure set out in article 38.22 or *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1974).

The trial court held a hearing concerning Exhibit 11 out of the jury's presence. However, no findings of fact or conclusions of law appear in the record.

Exhibit 11 is a written consent to search, signed by appellant, authorizing the Lockhart Police Department to obtain samples of his blood, hair, and saliva. The trial court admitted the consent form and test results before the jury. The record reflects that appellant had been arrested for public intoxication June 15, 1986, and while in jail, signed the consent form and gave the specimens on June 16, 1986, before his

release that afternoon. He was not indicted on the instant cause until November, and was taken into custody thereafter.

■ Appellant does not now contend, nor does the record reflect, that Exhibit 11 was obtained as the result of an illegal detention, arrest, or search as his motion alleged. Appellant did not complain at trial that the consent form was inadmissible for the reasons urged before this court. Because the grounds for suppression urged before the trial court are not those urged on appeal, nothing is presented for review. *Hughes v. State*, 562 S.W.2d 857 (Tex.Cr. App.1978).

Appellant also does not complain on appeal that he did not voluntarily execute Exhibit 11 or freely give his informed consent to the search. He does not complain that the police obtained the resulting evidence without his consent, and he does not challenge its admission. All of his points of error relate to the court's admission of the consent form itself and two facts contained therein, about which he made no complaint at trial. The exhibit was admissible for the purpose of showing appellant's consent to the search, and appellant did not request a limiting instruction. *See Clark v. State*, 483 S.W.2d 465 (Tex.Cr. App.1972). Its admission cannot be grounds for reversal.

The motion to suppress does not expressly refer to Exhibit 11, but it was the only "written statement" made by appellant in issue and was the subject of the pre-trial hearing. The motion also moves to suppress any oral statements appellant made. Prior to trial, appellant also filed a motion requesting a *Jackson v. Denno* hearing as to the voluntariness of oral or written admissions or confessions, if any, he might have made. The motion requested generally that, before admission of any such unspecified evidence, the trial court excuse the jury, hold a hearing, and file findings.

Appellant's complaints on appeal are predicated upon his position that Exhibit 11 is a self-incriminating written statement made as a result of custodial interrogation which fails to show on its face that appellant had been warned of, and had waived, his rights as required by the state and federal constitutions and Tex.Code Cr.P. Ann. arts. 1.04, 1.05, 38.22, and 38.23 (1977 & Supp.1989). His complaints assume that he timely objected to its admission on the grounds now asserted, and that it was admitted in violation of statutory and constitutional safeguards pertaining to written confessions.

Though appellant was in custody, we are unconvinced that he gave his consent as a result of custodial interrogation; that appellant made or preserved the complaints now urged; or that, if preserved, any error is reversible.

The consent contained the following sentences: "My name is Damien Capello Jr., *I live at 403 W. Prarie* [sic] *Lea in Lockhart*, CAldwell [sic] *County, Texas. I was Born* [sic] *on July 14, 1968 in Lubbock,* Texas [emphasis added]." Appellant objects to the admission of the information underscored. The form states that appellant freely and voluntarily signed the form to permit samples to be taken from him for testing. No other information is reflected in Exhibit 11, no other information was shown to have been sought or obtained as a result of appellant's "interrogation," and no complaint is made of any other assertion in the form except that portion underscored. Any error in the admission of these facts is harmless.

Appellant contends that this evidence is self-incriminating because it established that he was from Lubbock and that he lived near the location of the assault. Our review of the record reveals that the jury never heard evidence of the victim's sightings of appellant following the attack, and they were not otherwise informed of his address. The jury was not informed where "403 W. Prarie Lea" is located within Lockhart and we cannot presume that this information was common knowledge. The record does not reflect appellant's address at the time of the offense or at the time of trial, but only his address on June 16.

A police officer who knew appellant, when asked at trial "where [appellant] *resides*" [emphasis added], testified that appellant's residence *is* four or five blocks

from where the offense occurred. On its face, this evidence pertained to where appellant lived at the time of trial. This evidence is consistent with the information complained of from appellant's consent form and was admitted without objection. The victim also testified without objection that her assailant told her that he was from Corpus Christi, but later said he was from Lubbock.

▆ Appellant complains that his written statement corroborates evidence bearing on his identity as the assailant. However, the jury heard the facts complained of from other sources. Any error in the admission of evidence is cured where that same evidence is admitted elsewhere without objection. *Butler v. State*, 769 S.W.2d 234 (Tex.Cr.App.1989); *Hudson v. State*, 675 S.W.2d 507 (Tex.Cr.App.1984). The State made no reference to Lubbock in its closing argument, and only referred to the fact that appellant lived four or five blocks from where the crime occurred, as the officer testified. Appellant's points of error are overruled.

In his eighth and ninth points of error, appellant complains the trial court erred by failing to hold a hearing outside the presence of the jury to determine the voluntariness of his statements in Exhibit 11 and in failing to enter findings of fact and conclusions of law as required by Tex.Code.Cr.P. Ann. art. 38.22 (1979 & Supp.1989). Immediately before the officer testified, the court held a hearing to determine the voluntariness of the consent for the purpose of deciding the admissibility of the consent and the evidence resulting from the search.

To the extent that appellant seeks to exclude the consent form on the basis that it was governed by article 38.22 and *Jackson v. Denno*, the Court of Criminal Appeals has ruled that a person is not entitled to the *Miranda* warnings before giving a consent to search, and that the search is valid despite failure to give these warnings. *Clark v. State*, 483 S.W.2d at 467; *see Weeks v. State*, 417 S.W.2d 716 (Tex.Cr.

App.1967); *Hearn v. State*, 411 S.W.2d 543 (Tex.Cr.App.1967); *Heflin v. State*, 161 Tex.Crim. 41, 274 S.W.2d 681 (1955). Here, the evidence is undisputed that police administered the warnings although they are not recited on the form, and that the form was voluntarily signed. The court, by admitting the form and the evidence thereby obtained, found the consent to be voluntary. The record does not reflect any coercion of appellant, the consent states that it is knowingly and freely signed, and appellant offered no evidence that he did not give voluntary written consent. *Mendoza v. State*, 583 S.W.2d 396 (Tex.Cr.App.1979). The court need not make any further finding upon whether appellant voluntarily executed the written consent to search. The requirements of *Jackson v. Denno* and article 38.22 relate to written "confessions" of an accused and do not apply to written consents to search. *Phelper v. State*, 396 S.W.2d 396, 399 (Tex.Cr.App.1965), *cert. denied*, 382 U.S. 943, 86 S.Ct. 387, 15 L.Ed.2d 353 (1966). Likewise, article 38.22 does not apply to obtaining consent for the taking of body specimens such as blood. *Hearn v. State*, 411 S.W.2d at 545.[1]

Furthermore, appellant did not object at trial that the content of the form was incriminating, and thus governed by article 38.22, or request a *Jackson v. Denno* hearing on Exhibit 11. To the extent that he may have objected, his complaint and request were not timely, the trial court decided voluntariness against him, and he did not object to the trial court's failure to file findings. A careful reading of the record reveals that the only issue appellant raised as to Exhibit 11 was whether the consent to search was voluntary (which governed admission of the evidence thereby obtained), and the only mention of article 38.22 and a *Jackson v. Denno* hearing related to inquiries concerning his oral statements.

The trial court held a hearing outside the jury's presence, during which the officer who took the statement was questioned.

---

1. For an informative discussion relating to state and federal treatment in general of blood testing, consent to search, and self-incrimination, see *Olson v. State*, 484 S.W.2d 756 (Tex.Cr.App. 1972).

Almost immediately thereafter, the State examined him before the jury. Before the trial court, the State questioned the officer about the circumstances surrounding the execution of the consent form and his discussions with appellant. Appellant cross-examined the officer, but offered no proof. Appellant made no argument and objected only on the basis stated in his motion. The court ruled the consent admissible. Thereafter, when the State called the officer for the clear purpose of laying the predicate for its admission, appellant did not object to several pages of testimony identifying and discussing the contents of Exhibit 11 and the circumstances surrounding its execution. The officer described how he carefully read and explained the *Miranda* warnings to appellant; discussed the consent form with him; and told him he did not have to give consent, after which appellant voluntarily gave his consent to and signed the form. If appellant intended to challenge the contents of the exhibit as incriminating, the matter was not timely raised, if at all. After several pages of inquiry, the following exchange between the State and the officer transpired:

Q: And did you read these [*Miranda*] rights to the defendant?

A: Yes.

Q: Did he *indicate* he understood those rights [emphasis added]?

A: He did.

Appellant did not object. The State then asked:

Q. Did you go over each one of those rights with Mr. Capello?

A. I did.

Q: Did he *indicate* to you that he understood those rights [emphasis added]?

COUNSEL: I'll object now. We're getting into 38.22, an area that we have a motion on file on, and I object. We have a Jackson versus Denno motion on file.

The trial court held a bench conference but no ruling was obtained, and the question went unanswered, although the response had earlier been given without objection. The inquiry continued:

Q: . . . without saying what, if anything, the defendant may have *said*, did he *indicate* to you that he understood those warnings?

A: Yes.

Q: Did he, at any time, ask to have an attorney present?

A: No.

Appellant did not object.

The officer testified appellant's consent to search was given freely and that he voluntarily signed the form. The record then reflects the following exchange:

Q: At any time prior to the defendant signing State's 11, did he *indicate* that he wanted to have a lawyer present [emphasis added]?

COUNSEL: Objection, same one urged previously. *Now we're getting into what he indicated* [emphasis added].

The court overruled the objection, but the officer never answered. The questioning continued:

Q: Did he *indicate* at any time after you had given him the Miranda warnings, but before he signed 11, that he wished to terminate the conversation you were having [emphasis added]?

COUNSEL: Same objection. We urge the Court to consider our Jackson versus Denno motion.

The court overruled the objection and the officer answered "no". The State asked:

Q: Did he voluntarily sign State's 11?

A: He did.

Q: Did you in any way force him to do so?

Appellant objected that the State was leading the witness, but failed to get a ruling. The officer answered the question "no". The State offered Exhibit 11.

PROSECUTOR: At this time we're going to offer State's 11.

COUNSEL: We're going to *reurge the motion now before the jury that we made previously outside the presence of the jury,* as well as all the authority and arguments in our motion [emphasis added].

The trial court overruled appellant's objection and admitted the exhibit.

The record of the hearing clearly reflects that appellant's reliance on *Jackson v. Denno* did not go to the *contents* of Exhibit 11, but instead was asserted in an attempt to prevent admission of any *oral* statements by him, *i.e.*, what appellant *"indicated"* to the officer while executing the form. The State's line of inquiry is not complained of on appeal, and the objections either were not ruled upon, the questions not answered, or the same information testified to at a different time without objection. Only the testimony that appellant made no attempt to terminate the conversation was answered over objection, and it could be otherwise inferred by the testimony. When the State offered Exhibit 11 into evidence, appellant sought to exclude it on the basis of the motion "made previously outside the presence of the jury." The record reflects appellant never urged the *Jackson v. Denno* motion as to the consent form outside the presence of the jury, but only argued the motion to suppress. While appellant cited article 38.22 in his motion to suppress, he never complained to the trial court that Exhibit 11 contained incriminating information aside from its proof of consent to the search.

On cross-examination before the jury, appellant did not ask the officer any questions concerning the execution of Exhibit 11, but inquired only of the evidence thereby obtained. The fact that appellant executed Exhibit 11 voluntarily and knowingly was uncontroverted before the jury.

Even if the trial court erred in admitting that portion of the consent referring to appellant's date and place of birth, any error in the admission was harmless. We do not believe there was a reasonable possibility that the evidence complained of might have contributed to the conviction and punishment imposed by the jury. *Becknell v. State*, 720 S.W.2d 526, 528 (Tex.Cr.App.1986); *Graham v. State*, 710 S.W.2d 588, 592 (Tex.Cr.App.1986). A judgment will not be reversed for the erroneous admission of evidence that did not injure an appellant. *Prior v. State*, 647 S.W.2d 956 (Tex.Cr.App.1983). If there is overwhelming evidence of guilt, even con-

stitutional error may be harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Norman v. State*, 588 S.W.2d 340 (Tex.Cr.App.1979).

The inclusion of appellant's date and place of birth and his street address in the consent form is not likely to have contributed to his conviction. In closing arguments, counsel placed no reliance on appellant's statement as establishing his identity. The jury could consider the victim's positive identification of her assailant and blood test results confirming that appellant was within the five percent of the population which possessed the blood type of her assailant. Examining the record as a whole, we find that the admission of the evidence did not contribute to appellant's conviction or make the State's case more persuasive.

Applying the standards set out by the Court of Criminal Appeals, and in light of the overwhelming evidence in this cause aside from the evidence complained of, we hold that admission of Exhibit 11, even if erroneous, did not prejudice the juror's decision making and we conclude beyond a reasonable doubt that its admission did not contribute to appellant's conviction or punishment. *Harris v. State*, No. 69,366, Tex. Cr.App., June 28, 1989 (not yet reported).

In his sixth and seventh points of error, appellant complains that, in light of Exhibit 11, the trial court erred in failing to include in the court's charge two instructions to the jury regarding voluntary statements by appellant and evidence seized in violation of statutory and constitutional authority. Because appellant does not now complain that the consent was involuntary, the evidence illegally obtained, or the admission of the evidence erroneous, there can be no error in the court's failing to so charge the jury. Unless the error caused rendition of an improper judgment, it is not reversible.

A jury charge on the issue of the voluntariness of a confession is not required unless the issue is raised before the jury by evidence indicating that it was

given involuntarily. *Wiley v. State*, 632 S.W.2d 746 (Tex.Cr.App.1982); *Brooks v. State*, 567 S.W.2d 2 (Tex.Cr.App.1978). Further, where no issue is raised by the evidence regarding the acquisition of evidence in violation of constitutional or statutory authority, the trial court need not charge the jury on such matters. *Murphy v. State*, 640 S.W.2d 297 (Tex.Cr.App.1982). Appellant presented no evidence to dispute that he voluntarily executed his written statement or to suggest that police acquired the evidence contained therein in violation of any statutory or constitutional right.

■■■ No hearing is needed where appellant has not made a voluntariness objection. *Charles v. State*, 424 S.W.2d 909 (Tex.Cr.App.1967); *Pete v. State*, 471 S.W.2d 841 (Tex.Cr.App.1971). Similarly, the trial court is not required to make findings where a proper objection is not made. *Brooks v. State*, 567 S.W.2d at 4. Appellant's points four through nine are overruled.

In his tenth point of error, appellant complains that the trial court violated constitutional authority and Tex.Code.Cr.P.Ann. arts. 1.04 & 1.05 (1979) by refusing to allow appellant's counsel to ask the jury a certain hypothetical question during voir dire.

■■■ The trial court has wide discretion over the voir dire examination of the jury panel. *Adams v. State*, 577 S.W.2d 717 (Tex.Cr.App.1979). The party challenging his limitation must show an abuse of discretion by the trial court in so limiting the voir dire. *Faulder v. State*, 745 S.W.2d 327, 334 (Tex.Cr.App.1987); *Patterson v. State*, 598 S.W.2d 265, 272 (Tex.Cr.App. 1980).

■■■ Appellant's counsel inquired of the jury panel as a whole the following question:

If the rape were proven to you, but you had a reasonable doubt as to whether the aggravating factor of the rape happened, you knew the rape happened, you believed it, but the State's case was weak in your mind under your definition of reasonable doubt as to the aggravating

factor, could you cut that defendant loose and find him not guilty?

We find that the trial court did not abuse its discretion by refusing to allow this inquiry. As the trial court noted, the question implied that even if the jury found beyond a reasonable doubt that a defendant had in fact sexually assaulted the victim, the jurors must nevertheless acquit the accused if they were not convinced of the aggravating element. The law does not require this result and, therefore, appellant's hypothetical question would be misleading to the jury. Counsel declined to explain to the panel the possibility of conviction of a lesser included offense, as the court encouraged him to do. The trial court gave appellant ample opportunity to examine the venire fully. Appellant's tenth point of error is overruled.

■■■ In points of error eleven through sixteen, appellant complains that the trial court erred in denying his challenges for cause against six jurors he claims exhibited a bias or prejudice towards his Fifth Amendment privilege against self-incrimination. Appellant did not testify in his own defense. The trial court rules on challenges for cause to a prospective juror. When bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that a prospective juror is disqualified and the challenge should be sustained. *Anderson v. State*, 633 S.W.2d 851 (Tex.Cr.App.1982). The rulings should not be overturned unless, in light of the entire voir dire examination, bias or prejudice has been established as a matter of law. *Anderson*, 633 S.W.2d at 854.

■■■ The State asked the panel members whether they accepted appellant's privilege against self-incrimination and whether they would hold his refusal to testify against him. None of the panelists responded that they would hold it against him.

Appellant's attorney then tested the jurors on their views as to the fairness of the proposition that the prosecuting witness

might have to testify, but that the accused would not. Appellant's attorney asked the panel members various questions, including whether they would think appellant was "hiding something," if he did not testify in his own defense. The State objected that the proper question was, "[i]f the judge instructs you not to hold it against him, will you be able to follow the law?" The court sustained the objection. Appellant's attorney then asked the jury panelists, "Would you hold [his failure to testify] against him?" The State objected again, but was overruled. Counsel advised the court that he was not asking "challenge" questions, but was merely trying to evaluate the answers for the purpose of exercising peremptory strikes intelligently, a legitimate purpose of voir dire. The court permitted the line of inquiry, saying he would grant both sides an opportunity for additional questioning as might become necessary. The six jurors of whom appellant complains indicated they would think an accused was hiding something and/or might hold an accused's failure to testify against him.

The trial court then read to the panel members the proper instruction on the accused's Fifth Amendment privilege as he would give it to them in the charge. The State asked the panel members whether any one of them would be unable to follow those instructions if the trial court gave them to the jury and whether any one of them had any reservations on the matter. None of the panelists responded that they could not do so or had reservations about the matter. The prosecutor then reminded them that the jury was obliged to follow the law as given them by the judge, "[a]nd I take it by all of your silences that you will be able to follow those particular instructions should they be given to you." Appellant declined to ask further questions, and his challenges for cause were overruled. He asked for eight additional strikes. Appellant claims he was forced to exhaust all his peremptory challenges, his request for additional strikes was denied and he was required to accept objectionable jurors, expressly naming all twelve jurors. We need not address whether appellant

preserved his complaint as we find no abuse of the trial court's discretion. *See Payton v. State*, 572 S.W.2d 677 (Tex.Cr. App.1978).

The proper subject of inquiry is whether the panelists would, regardless of their wish for the accused to testify, follow the law and not consider the silence of the accused as evidence against him. *Adams*, 577 S.W.2d 717. None of the six potential jurors of whom appellant complains, when informed of their legal duty if chosen, responded that they would be unable to follow the law as given to them by the court. Twice they failed to respond in the negative when asked whether, despite their personal thoughts, they would be able to follow the instructions of the court and would not hold appellant's failure to testify against him if so directed. We cannot hold that any of the six members challenged were disqualified as a matter of law or that the trial court, who could observe the demeanor, attitude, expressions, and any nonverbal responses of the panel members, abused its discretion in refusing appellant's challenges for cause. *See Little v. State*, 758 S.W.2d 551 (Tex.Cr.App.1988), *cert. denied*, — U.S. —, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). Appellant's points of error eleven through sixteen are overruled.

In his seventeenth point of error, appellant complains that the trial court erred by including an affirmative deadly weapon finding in the judgment and sentence. The State concedes that the trial court did not have the authority to make such a finding. *Polk v. State*, 693 S.W.2d 391 (Tex.Cr.App. 1985). Therefore, the judgment will be reformed to delete this finding pursuant to Tex.R.App.P.Ann. 80(b) (Supp.1989). Appellant's seventeenth point of error is sustained.

The judgment of the trial court is reformed, and as reformed, affirmed.