**Elroy James McGEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00095–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Jan. 11, 2001.

Decided Jan. 12, 2001.

James M. Leitner, Houston, for appellant.

Calvin A. Hartmann, Harris County District Attorney's Office, Rikke Burke Graber, Assistant District Attorney, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Elroy McGee appeals from his conviction for murdering his wife. Trial was to a jury. He pleaded true to one enhancement allegation, and the jury assessed his punishment at seventy-five years' imprisonment.

McGee contends that his conviction should be reversed because of improper restrictions placed by the court upon his voir dire questions, by improperly admitting hearsay, and by limiting mitigation evidence at the punishment phase of trial.

The evidence shows that McGee, who is virtually illiterate and has a history of hearing voices and has been prescribed psychotropic medication, was found competent to stand trial for the murder of his wife. He gave a statement admitting the murder to the police, who wrote the statement for him and read it orally before McGee signed the transcription. There was testimony by his neighbor, Phyllis Williams, that she heard a scream followed by several gunshots from McGee's house.

She testified that she saw McGee run away from the house and that she went to the house and found his wife lying on the garage floor with a gunshot wound to her chest. McGee turned himself in to the police, telling them that he had shot his wife. After one false start, where he took police to the wrong location, McGee took police to his mother's house, where they found the pistol used in the shooting.

McGee first contends that the court improperly restricted the scope of his voir dire questioning of the jury panel. The Sixth Amendment guarantees the assistance of counsel and a trial before an impartial jury. U.S. CONST. amend. VI. Part of this constitutional guarantee is an adequate voir dire to identify unqualified jurors. *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992); *Raby v. State,* 970 S.W.2d 1, 10 (Tex.Crim. App.1998). Essential to the guarantee is the right to question veniremembers in order to intelligently exercise peremptory challenges and challenges for cause. *Raby,* 970 S.W.2d at 10; *Linnell v. State,* 935 S.W.2d 426, 428 (Tex.Crim.App.1996); *Dinkins v. State,* 894 S.W.2d 330, 344–45 (Tex.Crim.App.1995). The court in *Raby* quoted *Hernandez v. State,* 508 S.W.2d 853, 854 (Tex.Crim.App.1974): "[T]he right to propound questions on voir dire, in order to intelligently exercise peremptory challenges, is of the greatest importance."

The scope of voir dire is therefore broad, and an accused is generally entitled to question prospective jurors on any matter that will be an issue at trial. *Dinkins,* 894 S.W.2d at 344. Error in the denial of a proper question which prevents the intelligent exercise of counsel's peremptory challenges is an abuse of discretion. *Atkins v. State,* 951 S.W.2d 787, 790 (Tex.Crim.App.1997); *Allridge v. State,* 762 S.W.2d 146, 163 (Tex.Crim.App.1988). It is the propriety of the question which the accused sought to propound that is determinative of the issue. *Green v. State,* 934 S.W.2d 92, 106 (Tex.Crim.App.1996). Questions that probe into bias and preju-

dice against the applicable law are permissible. *Hogue v. State,* 711 S.W.2d 9, 27 (Tex.Crim.App.1986).

However, a party cannot ask veniremembers to commit themselves prior to trial as to how they would consider certain testimony, nor may a prospective juror be asked what he or she would do at any particular stage of the trial under a given set of facts. *Standefer v. State,* 2 S.W.3d 23, 25 (Tex.App.—El Paso 1999, pet. granted). The standard of review when an accused asserts that he was improperly restricted in voir dire questioning is whether the trial court abused its discretion. *Skinner v. State,* 956 S.W.2d 532, 542 (Tex.Crim.App.1997). The denial of a proper question during voir dire examination is subject to a harm analysis under TEX.R.APP.P. 44.2(a). *Gonzales v. State,* 2 S.W.3d 600, 604 (Tex.App.—Texarkana 1999, pet. ref'd)(opinion on remand).

McGee complains that the court restricted his voir dire in connection with the following lines of questioning. During voir dire, counsel began a series of questions directed at eliciting information from the jurors about their ability to exclude written statements by the defendant if they were shown to be involuntary because of police misconduct. The court sustained an objection to the questioning, and the court warned counsel not to begin a jury argument. Counsel then continued as follows:

VENIREPERSON: I think it would stay in the back of my mind that somebody admitted to doing something. That's my personal opinion.

[DEFENSE COUNSEL]: Okay. So from your own experience, you're saying that you could not disregard it and follow the Court's instructions, correct?

THE COURT: Don't contract with the panel, Counsel.

VENIREPERSON: If somebody admitted to doing something, whether it

was involuntary or voluntary, I think it would sway my judgment.

[DEFENSE COUNSEL]: Okay. And what is your name, sir?

VENIREPERSON: Corey Freeland.

[DEFENSE COUNSEL]: How many would agree or have the same opinion as Mr. Freeland?

You're number 3?

VENIREPERSON: 3, sir, yes. I think that if you admit to doing it, I'll say you're guilty.

[BY THE STATE]: Judge, I object to this as an improper question.

THE COURT: Be sustained. Move on, Counsel.

[DEFENSE COUNSEL]: All right. How many simply could not follow the Court's instructions to disregard a confession if it was—

THE COURT: Counsel, the Court has instructed you don't go back into that question.

The State argues that the court did not err in limiting the questioning because the voluntariness of McGee's statements did not come up at trial, although acknowledging that the issue had been raised at a pretrial hearing. This may be a proper argument against harm; it does not meet the question of whether the court's ruling was in error. There was a statement signed by the defendant, and whether McGee's attorney elected to make that an issue at the trial was a matter of trial strategy. The court's refusal to allow the jury to be questioned about the individual jurors' attitudes toward an involuntary statement could be a major factor in that strategy.

The questions by counsel did not attempt to contract with the jury panel, but rather to ascertain their willingness to consider the voluntariness or involuntariness of a statement if the court so instructed them.

Questions by both prosecutors and defense counsel asking a panel whether it could obey the court's instructions have been held proper in different contexts. *Bridge v. State,* 726 S.W.2d 558, 565 (Tex. Crim.App.1986); *Tate v. State,* 939 S.W.2d 738, 746 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd); *Capello v. State,* 775 S.W.2d 476, 489 (Tex.App.—Austin 1989, pet. ref'd).

Article 38.22 of the Code of Criminal Procedure requires the judge to instruct the jury that if it believes or has reasonable doubt that the evidence was obtained in violation of that article, then the jury shall regard any evidence so obtained. TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979 & Supp.2001). Article 38.22, § 6 specifically provides that when a judge finds that a statement is voluntarily made, the evidence pertaining to such matter may be submitted to the jury and the jury shall be instructed that unless the jury believes beyond a reasonable doubt that the statement is voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof. The judge is further required to appropriately instruct the jury generally on the law pertaining to such statements. Counsel should be entitled to determine potential jurors' willingness to consider the voluntariness or involuntariness of the statement and to follow judge's instructions pertaining to such statements.

 McGee further contends that the court erred by refusing to permit him to question the panel about the jurors' views on prior convictions:

[DEFENSE COUNSEL]: Okay. One of the things that people can sometimes consider is whether or not somebody has been convicted of prior offenses. The law allows you to use prior felony convictions and prior misdemeanor convictions involving moral turpitude in considering whether or not you want to believe that particular witness. There's obviously some problems with this. You may not like that person immediately

because you know they're a criminal and that's certainly understandable.

But prior convictions do not mean that somebody can't see something happen, can't remember—

[BY THE STATE]: I object to this as argumentative, Judge.

THE COURT: Be sustained.

[DEFENSE COUNSEL]: And how many believe that a prior conviction simply prohibits somebody from telling you the truth? Anyone at all feel that way? Sometimes a defendant may be a witness and he may have prior convictions. How many would find a defendant guilty of a crime just because he had been convicted of something else sometime in the past?

[BY THE STATE]: I object to that as asking the jurors to commit to a certain set of facts.

THE COURT: That will be sustained.

[DEFENSE COUNSEL]: *How many would consider that in terms of— if you were instructed that you could only use prior convictions for assessing credibility, how many would just use it for that purpose to find the defendant guilty?*

[BY THE STATE]: I object again to asking to find him guilty.

THE COURT: That will be sustained.

(Emphasis added.)

■■■■ By this ruling, the court was prohibiting counsel from determining if any juror was not willing to follow the court's instruction concerning prior convictions. A voir dire question is proper if it seeks to discover a juror's views on an issue applicable to the case. TEX. CONST. art. I, § 10; *Gonzales v. State,* 2 S.W.3d 600 (Tex.App.—Texarkana 1999, pet. ref'd). Counsel may not commit veniremembers to a certain verdict given particular facts. *Maddux v. State,* 862 S.W.2d 590, 592 (Tex.Crim.App.1993). However, hypothetical questions containing facts similar to those presented in the case on trial may be used to explain the application

of the law to the case, but not to commit prospective jurors to a particular verdict given the facts presented in such questions. *Atkins,* 951 S.W.2d at 789.

One of the questions asked hypothetically was "How many would find a defendant guilty of a crime just because he had been convicted of something else sometime in the past?" It made an inquiry, and it did not seek to commit the jurors to a verdict in that case.

In the next question, counsel asked "How many would consider that in terms of-if you were instructed that you could only use prior convictions for assessing credibility, how many would just use it for that purpose to find the defendant guilty?"

Part of the constitutional guarantee of the right to counsel in trial before an impartial jury is an adequate voir dire to identify unqualified jurors. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Gonzales,* 2 S.W.3d 600.

■■■■ The state constitutional right to be represented by counsel includes the right of counsel to question the members of the jury panel in order to intelligently exercise preemptory challenges. TEX. CONST. art. I, § 10; *Gonzales,* 2 S.W.3d at 603. A defendant is harmed when he is deprived of voir dire sufficiently to allow him to decide intelligently those jurors he may wish to strike. *Id.* Denial of proper questions during voir dire examination is always reversible error. *Maddux,* 862 S.W.2d at 592. The right to ask questions of panel members is included in the right to counsel and is of constitutional magnitude in this state. *Graham v. State,* 566 S.W.2d 941 (Tex.Crim.App.1978). When an error occurs in the questioning that resulted in the selection of the jury, there is probability that the error will skew every act taken by counsel in connection with the denied questions because counsel has been improperly denied the right to have insight into the jurors' reactions to that area. This is the type of error that we rarely believe will be harmless. *See Gon-*

*zales v. State,* 994 S.W.2d 170, 171–72 (Tex. Crim.App.1999) (citing *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997)).

 If error is constitutional in nature, we apply Rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* TEX. R.APP.P. 44.2(a). Thus, we now turn to the question of whether we may conclude beyond a reasonable doubt that under Rule 44.2(a) the error did not contribute to the conviction or punishment. *See Gonzales,* 2 S.W.3d at 604. Because the voluntariness of McGee's statement did not come up at trial and his counsel did not offer testimony that he had planned to challenge the statement on the basis of voluntariness and ask for a jury issue until he was denied his right to voir dire, there was no evidence offered that the voluntariness of the statement would have been a factor or was a factor in the trial. Thus, this was harmless error. However, when counsel was not allowed to determine whether any of the jurors would consider prior convictions a basis for a conviction even if the court instructed them to the contrary does constitute harmful error.

 McGee further contends that his voir dire was improperly limited because he was not permitted to determine whether the panel members would agree with the statement that "some people may be punished more by prison than other people." The trial court sustained a nonspecific objection, but then directed counsel to rephrase his question. Counsel did not do so, but instead moved on to other areas. The claim of error was not preserved in this instance because there was no attempt to rephrase and further pursue the matter.

McGee further contends that his voir dire was improperly limited because he was not permitted to determine whether the panel members would focus solely on the vengeance aspect of punishment in their deliberations on punishment, or if they could consider the other proper purposes of punishment. We have reviewed this portion of voir dire, and it reflects that counsel was permitted to complete his questioning in this area. Error has not been shown.

 McGee next contends that the trial court erred by allowing the introduction of hearsay evidence by detective Jim Hoffman. Hoffman testified that the murder weapon was found by another detective on the dining room table of McGee's mother's house. He was asked if he had learned how the weapon came to be there. Defense counsel objected based upon hearsay. The court initially sustained the objection. The State then informed the court that the detective had obtained that information from the defendant's mother, who had since died. The trial court thereupon reversed itself and admitted the testimony.

The reason accepted by the trial court justifying the admission of this evidence was not valid. There is an exception to the hearsay rule when the speaker is unavailable because of death. TEX.R.EVID. 804. That exception, however, is limited to former testimony, dying declarations, and statements of personal or family history. The exception does not apply to this situation. Thus, the court erred by admitting the testimony over a proper objection.

 However, as pointed out by the State, the same information was provided without objection by a different witness, detective Harry Fikaris. Fikaris testified that when they arrived at McGee's mother's house, she explained how the pistol got into the house. Fikaris then recounted her explanation of how the pistol was moved into the house from the trunk of her car. Error has been waived. *See Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim.App.1998).

 McGee also complains about admission of hearsay evidence through the testimony of Barbara Bonds, a police officer with the Family Violence Unit. Bonds testified that she spoke to McGee's wife,

Patricia Clay, prior to the occurrence in question. Bonds testified over objection that Clay had told her that after discovering her intention to divorce him, McGee had attempted to cause a car that Clay was driving to crash while they were on the freeway. Bonds testified in considerable detail about Clay's statement detailing the incident and that Clay had filed a complaint against McGee for that reason and that she was afraid that McGee was going to kill her.

Counsel objected to these statements as hearsay. The court overruled the objection and granted counsel a running objection to Bonds's testimony. The testimony is a direct recounting of an out-of-court statement by a third party, and its admission was improper. TEX.R.EVID 802. The trial court erred by overruling the objection.

■ The same information was also provided without objection by another witness, Elizabeth Batten, a caseworker in the Family Criminal Law Division who was questioned about an information card that was filled out when Clay sought a protective order through their office. She read the contents of the card to the jury, which consisted of a statement that McGee had grabbed the steering wheel at sixty miles per hour, that Clay had to fight him to gain control of the car, and that he had tried to cause a crash to kill her.[1] The claim of error has been waived. *Leday,* 983 S.W.2d at 718.

■ McGee also complains about admission of hearsay through the testimony of Elizabeth Batten, a caseworker with the Family Criminal Law Division of the district attorney's office. Counsel directs the court to his hearsay objection to a state-ment by Batten that she had not talked to Clay, but that another caseworker had done so. The objection was correctly overruled.

Batten did not recount statements by another caseworker either directly or in paraphrase, and her testimony thus did not meet the requirements of the hearsay rule. Her statement was not objectionable. The contention of error is overruled.

■ McGee next contends that the court erred by refusing to permit him to offer mitigating evidence at the punishment phase of trial. Counsel attempted to show at the punishment phase the type of person that McGee had been while incarcerated. He asked McGee if he had been disciplined while in the Harris County jail. Before McGee answered, the State objected to the relevance of the questioning; the court sustained the objection and refused to allow discussion on its admissibility.

Article 37.07, § 3(a) of the Code of Criminal Procedure provides that evidence, in accordance with the Texas Rules of Evidence, may be offered "as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried...." TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.2001).

■ The trial court has broad discretion in determining admissibility of evidence at the punishment phase of trial. *Cooks v. State,* 844 S.W.2d 697, 735 (Tex. Crim.App.1992). However, the jury is also entitled to have before it "all possibly rele-

---

1. The record does not contain the document. It was offered into evidence without objection, but the trial court never admitted the document. When we contacted the court reporter to obtain the exhibit, she informed the court that because it was not admitted into evidence it was not available. This answer is unacceptable. TEX.R.APP.P. 13.1(b), (c) explicitly require the reporter to take all exhibits and then file "all exhibits" with the trial court clerk after a proceeding ends. When a record is requested, it is then the duty of the reporter to prepare the reporter's record, which consists of "the court reporter's transcription of so much of the proceedings, and any of the exhibits, that the parties to the appeal designate." TEX.R.APP.P. 34.6(a)(1).

vant information about the individual defender whose fate it must determine." *Id.* (quoting *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)).

■ The Supreme Court has specifically held in a death penalty context that a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is itself an aspect of his character that is by its nature relevant to the sentencing determination. *Skipper v. South Carolina,* 476 U.S. 1, 7, 106 S.Ct. 1669, 1672, 90 L.Ed.2d 1, 8 (1986); *Rhoades v. State,* 934 S.W.2d 113, 138 (Tex.Crim.App. 1996). This concept is not, however, limited solely to a death penalty context. When the issue of the mental stability of the defendant is at issue, as in this case, showing his mental state after being placed in a controlled situation would be a matter relevant for a jury to consider in determining an appropriate punishment for his crime.

■ The stated objective of the Penal Code is to ensure public safety through the deterrent influence of penalties, through the rehabilitation of those convicted, and through punishment as necessary to prevent likely recurrence of criminal behavior. TEX.PEN.CODE ANN. § 1.02 (Vernon 1994). To hold that evidence about McGee's behavior after being incarcerated was not relevant is contrary both to controlling authority and to the legislatively stated purpose of the criminal justice system. Thus, if shown to be mitigating, this type of evidence would be admissible.

However, counsel did not provide an offer of proof for our review, and we cannot ascertain the likely testimony if the question had been answered. In the absence of such information, although we conclude from the question that the court should have permitted the answer, any claim of error is not preserved for appellate review. *Warner v. State,* 969 S.W.2d 1, 2 (Tex.Crim.App.1998); *Greenwood v. State,* 948 S.W.2d 542, 549 (Tex.App.—Fort Worth 1997, no writ); *see* TEX.R.EVID.

103 ("Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.").

The judgment is reversed, and the cause is remanded to the trial court for a new trial.

Dissenting Opinion by Chief Justice Cornelius.

CORNELIUS, Chief Justice, dissenting.

I believe the trial court acted within its discretion in construing defense counsel's questions on voir dire as attempts to commit the panel members to a specific verdict. A careful reading of the voir dire questions and the court's rulings shows that the court did not prohibit defense counsel from questioning the panel members about their willingness to follow the law and the court's instructions. Defense counsel could have successfully made these inquiries by using the proper hypothetical questions phrased so they did not attempt to commit the panel members to specific verdicts. I would not reverse this case on such an exercise of the court's broad discretion in regulating the voir dire.

Moreover, McGee was not harmed. He did not object to the court's restricting the nature of his counsel's questions at voir dire. We do not know what the panel members' answers would have been to the unanswered and unmade questions McGee wanted to propose. McGee did not make or ask to make a bill of exceptions to show what answers would be made to the questions, or to show if any bias or prejudice or unwillingness to follow the court's instructions on the part of any panel member would be revealed.

If the trial court's ruling on McGee's voir dire questions could be considered an abuse of discretion, the error was certainly harmless or was waived.

For these reasons, I would affirm the judgment.