**Antonio GONZALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–89–00592–CR.**

Court of Appeals of Texas, San Antonio.

March 31, 1992.

Rehearing Denied March 31, 1992.

Second Rehearing Denied April 28, 1992.

Larry Zinn, San Antonio, for appellant.

Fred G. Rodriguez, Former Crim. Dist. Atty., Steven C. Hilbig, Crim. Dist. Atty., Barbara Hervey, Mary Roman, Diane Cruz, Asst. Crim. Dist. Attys., San Antonio, for appellee.

Before CHAPA, BIERY and CARR, JJ.

## OPINION

CHAPA, Justice.

Appellant's motion for rehearing is denied, this court's opinion delivered on December 11, 1991 is withdrawn, and the following opinion is substituted therefor.

Appellant, Antonio Gonzales, appeals his conviction for the offense of aggravated sexual assault of a child. The trial court sentenced appellant to 99 years in prison and ordered that the sentence be served consecutively with the 99 year sentence in # 88–CR–6102 (*Gonzales v. State*, 822 S.W.2d 189 (Tex.App.—San Antonio 1991, no pet.)), and the 99 year sentence in # 88–CR–0089A (*Gonzales v. State*, 784 S.W.2d 723 (Tex.App.—San Antonio 1990), *rev'd*, 818 S.W.2d 756 (Tex.Crim.App.1991)).

Appellant was indicted for sexually assaulting his ten year old stepdaughter. While the defense presented no evidence, the State's witnesses testified as follows: Janie Ramos, the complainant's grandmother, testified that soon after the complainant came to live with her, "she noticed something about [complainant's] underwear"; Jose Bocanegra, a child protective services worker for the Department of Human Services, testified that the alleged sexual abuse of the complainant was reported to the Department of Human Services by a social worker, and that after the report, the complainant was examined by Dr. Guerra, as well as the staff of the Bexar County Medical Center; Norma Jean Avila, custodian of records for Dr. Guerra, verified the introduction of Dr. Guerra's records; Sylvia Montalvo, the custodian of records for the Bexar County Medical Center, verified the introduction of the Bexar County Medical Center records; Sharon McMahon, a psychotherapist with the County Guidance Center, testified that she has been the complainant's therapist since January of 1988, and that the complainant has depressive symptoms which are similar to those of a sexually abused child; Dr. Anthony Gardia, a 3rd year pediatric resident with the Bexar County Hospital District, testified that he examined the complainant on January 13, 1988, that he found evidence consistent both with sexual abuse and nonabuse

cases, and that the complainant told him that the sexual abuse occurred over a period of two years; and, the complainant testified that appellant sexually assaulted her in August of 1987, as well as at other times.

Prior to the trial on the merits, the State filed a motion to allow the minor complainant to testify by closed circuit TV, alleging that the child was now undergoing psychological treatment as a result of appellant's acts of sexual assault and that she was very intimidated by appellant. After a hearing outside of the presence of the jury, the trial court ordered that the testimony be given by two way closed circuit TV. The trial court filed findings of fact and conclusions of law supporting the court's ruling, which have not been attacked on appeal by the appellant.

The closed circuit system used had two complete units, audio and visual. One unit was situated in the courtroom where it could be viewed and heard by the judge, jury, defendant, and counsel for both sides. Another identical system was located in a separate, smaller room where the complainant and a child advocate employed by the district attorney were situated.[1] Therefore, all participants in the trial were able to see and hear each other. It was through this media that the complainant testified.

Appellant raises the following points of error:

1. whether the trial court erred in allowing the child complainant to testify by means of closed circuit TV under TEX. CODE CRIM.PROC.ANN. art. 38.071 (Vernon Supp.1991) because the procedures of the statute were not followed, and the testimony violated the Confrontation Clauses and the Due Process Clauses of the United States and Texas Constitutions;

2. whether the trial court erred in failing to instruct the jury concerning the limiting effect of extraneous act evidence; and,

3. whether the trial court erred in allowing a child psychologist to testify as to whether the child complainant was suffering the symptoms of a child abuse victim.

■ Initially, appellant contends that the trial court erred in allowing the child complainant to testify by means of closed circuit TV because the procedures of TEX. CODE CRIM.PROC.ANN. art. 38.071 (Vernon Supp.1991) were not followed, and the testimony violated the Confrontation Clauses and the Due Process Clauses of the United States and Texas Constitutions.

Appellant specifically asserts that the identical issue was presented to this court in *Gonzales v. State*, 784 S.W.2d 723 (Tex. App.—San Antonio 1990), *rev'd*, 818 S.W.2d 756 (Tex.Crim.App.1991), in a case involving the conviction of the same appellant for the murder of the present child complainant's infant sister. In *Gonzales*, 784 S.W.2d 723, this court disapproved of the trial court's employment of the identical TV procedure complained of in the case now before us, which was utilized for the purpose of presenting the testimony of the present child complainant, who was a witness in that case rather than a complainant. *Gonzales*, 784 S.W.2d at 728–29. Appellant points out that all facts relevant to his initial complaint before this court are identical to those in *Gonzales*, 784 S.W.2d 723. Since the Texas Court of Criminal Appeals granted the State's Petition for Discretionary Review in *Gonzales*, 784 S.W.2d 723, appellant is correct in suggesting that the result of that review by the Texas Court of Criminal Appeals is dispositive of this issue.

On September 18, 1991, the Texas Court of Criminal Appeals issued its opinion in *Gonzales v. State*, 818 S.W.2d 756 (Tex. Crim.App.1991), reversing this court's opinion, and affirming the trial court's employment of the identical closed circuit audio visual procedure which forms the basis for appellant's first complaint before us.

The issues resolved by the Texas Court of Criminal Appeals were described as fol-

---

1. This room is situated in a part of the courthouse that has been designated for use by the district attorney.

lows: "For present purposes, the only complaints which have reached us on discretionary review are that the procedure in question violated appellant's rights of confrontation and the terms of Article 38.071." *Id.* at 768 (Benavides, J., concurring). The majority of the Court resolved both issues, jointly embracing with approval the State's contention that the "central legal issue is the same with or without reference to article 38.071(3); the question being, did the State's prosecutorial innovation violate the defendant's right to confrontation." *Id.* at 765. Having resolved both issues, the Court of Criminal Appeals reversed and remanded to this court "to address appellant's due process claims that were not addressed on original submission."

The court reasoned that the courts, as well as the legislature, could adopt procedures to protect children who are called to testify in court. However, the court held that before an accused gives up the right of a "face to face" confrontation with the accuser, there must be an adequate showing of necessity. *Gonzales*, 818 S.W.2d at 761. In making this declaration, the Court specifically adopted the holding of the United States Supreme Court in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). In *Craig*, the Court acknowledged that face to face confrontation forms "'the core of the values furthered by the Confrontation Clause,'" and stated that:

> Given the State's traditional and transcendent interest in protecting the welfare of children and buttressed by the growing body of academic literature documenting the psychological trauma suffered by child abuse victims who must testify in court, we will not second guess the considered judgment of the Maryland Legislature regarding the importance of its interest in protecting child abuse victims from the emotional trauma of testifying. Accordingly, we hold that if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify use of a special procedure that permits a child witness in

such cases to testify at trial against the defendant in the absence of face-to-face confrontation with the defendant.

*Craig*, 110 S.Ct. at 3168–69 (citations omitted).

The majority in *Gonzales*, quoting *Craig*, stated:

> The Court emphasized, however, that the finding of "necessity" must be on a case by case basis. '[T]he trial court must hear evidence and determine': *First*, 'whether use of the one-way closed-circuit procedure is necessary to protect the welfare of the particular child witness who seeks to testify.' ... *Second*, the trial court must also find 'that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.' ... *Third* and finally, the trial court must determine that the emotional distress suffered by the child witness in the presence of the defendant is 'more than de minimus, i.e., more than mere nervousness or excitement or some reluctance to testify.'

*Gonzales*, 818 S.W.2d at 762 (citations omitted; emphasis in original).

Turning to the Constitution of Texas, and considering that in *Gonzales* the State used a two way TV device, the court stated:

> Taking into account first, that there was confrontation in the form of cross-examination in the case before us, and second, the exigencies of the particular case before us, we will not read the right to confrontation guaranteed under our State Constitution as affording appellant the right to face-to-face confrontation. In short, we will use the same analysis applied in *Craig* to determine if the State Constitution has been violated in the case before us.

*Id.* at 764. In compliance with *Gonzales*, 818 S.W.2d 756, we will likewise adhere to the same analysis.

At the out of court hearing on the State's motion to use closed circuit T.V. to present the testimony of the child complainant, the State's witnesses testified as follows: Janie Ramos, the complainant's grandmother, testified that the complainant lived with

her for two years and appears to fear the appellant very much, that the complainant often told her that she was very afraid of the appellant, who threatened to kill the complainant if she told anyone about his actions, that the complainant became more nervous as the trial date approached, that the complainant was afraid to be alone and cried frequently, and that the complainant was incapable of testifying in the same courtroom with the appellant, but that she was able to testify through the closed circuit method; Sharon McMahon, a staff clinician for the Community Guidance Center, testified that she performed psychological evaluations for the Center and saw the complainant fifty four times, that the complainant was afraid of the appellant and told her that the appellant threatened to kill her if she told anyone what the appellant did to her, that the complainant would suffer undue psychological harm in the form of a major depression if she was required to testify in the courtroom and remain in the same room with the appellant; and, Robert Hogue, a criminal district attorney investigator, who described the closed circuit system which was to be employed if the court granted the State's motion. The record further reflects findings of fact and conclusions of law entered by the trial court which support the court's order granting the State's motion to use closed circuit T.V., and which are not challenged by the appellant in this appeal.

Since the appellant has conceded that the relevant facts and legal arguments advanced in support of these issues are identical to those presented to the Texas Court of Criminal Appeals in their recent *Gonzales* decision, we must obviously reach the same results. Further, we have reviewed the record and hold that the trial court was justified in concluding that: 1) the closed circuit process employed by the court was " 'necessary to protect the welfare of the particular child witness who [sought] to testify' "; 2) " 'the child witness would [have been] traumatized ... by the presence of the [appellant]' " if required to testify in the same room; and, 3) "the emotional distress [which would have been suffered] by the child witness in the pres-

ence of the [appellant] [would have been] 'more than ... mere nervousness or excitement or some reluctance to testify.' " *Gonzales*, 818 S.W.2d at 756, 762.

Upon remand, this court was directed "to address appellant's due process claims that were not addressed on original submission." *Id.* at 766. On March 18, 1992, this court issued its opinion on remand pointing out that upon original submission, appellant had presented one point of error, dividing "his only point into three parts: (A) article 38.071 did not apply in the instant case; (B) if applicable, the statute was not followed; and (C) implementation of article 38.071 violated his rights of confrontation and due process rights " 'under the United States and Texas Constitution.' " *Gonzales v. State*, 831 S.W.2d 345, 346 (Tex. App.—San Antonio, 1992, no pet.). The court noted that the appellant "failed to cite any specific constitutional provisions." In disposing of the issue before it, this court stated:

In view of the Court of Criminal Appeals' holding that the trial court's action was proper under the circumstance independent of article 38.071, and even in absence of an enabling statute, appellant's claim about section 3 of article 38.071 is moot. Moreover, putting aside any question of the multifarious nature of the point of error, *see McCambridge v. State*, 712 S.W.2d 499, 502 (Tex.Crim. App.1986); *Capello v. State*, 775 S.W.2d 476, 481 (Tex.App.—Austin 1989, pet. ref'd), appellant's due process claims are conclusory in nature and not supported by cited authority. Tex.R.App.P. 74(f); *Melton v. State*, 713 S.W.2d 107, 113–14 (Tex.Crim.App.1986); *Morales v. State*, 814 S.W.2d 824, 829 (Tex.App.—Amarillo 1991, pet. vacated); *Hawkins v. State*, 807 S.W.2d 874, 875 (Tex.App.—Beaumont 1991, pet. ref'd); *Coyle v. State*, 775 S.W.2d 843, 847 (Tex.App.—Dallas 1989, no pet.). Nothing is presented for review. *Carey v. State*, 677 S.W.2d 821, 825 (Tex.App.—Fort Worth 1984, no pet.).

Further, under the circumstances, we find no denial of "due process" as that term is understood. *Webb v. State,* [161 Tex.Crim. 442] 278 S.W.2d 158, 160 (1955); *Zepeda v. State,* 773 S.W.2d 730, 731–32 (Tex.App.—San Antonio 1989, no pet.). Appellant's due process claims are overruled.

*Id.* at 346–347.

The issues presented to this court in this appeal by appellant are identical and are presented in basically the same manner. Therefore, we adopt the same reasoning and conclusions announced by this court in *Gonzales v. State,* 831 S.W.2d 345 (Tex. App.—San Antonio, 1992, no pet.). Moreover, appellant's complaint that the procedures employed by the trial court differed from the procedures outlined in article 38.-071 were also considered and resolved against the appellant by the Court of Criminal Appeals in *Gonzales v. State,* 818 S.W.2d 756, and by this court in *Gonzales v. State,* 822 S.W.2d 189 (Tex.App.—San Antonio 1991, no pet.). We further fail to see how appellant can complain since the procedures employed by the trial court here provided more protection to the appellant than the procedures outlined in article 38.071. Appellant's point is rejected.

■ Appellant next contends that the trial court erred in failing to instruct the jury concerning the limiting effect of extraneous act evidence.

Appellant argues that because of testimony by both the complainant and Dr. Gardia that the alleged *sexual abuse occurred* at different times over a period of approximately two years, the jury should have been instructed concerning the limiting effect of extraneous act evidence. Appellant timely requested an instruction[2] limiting

the purpose for which the jury could consider the evidence.

In denying the requested instruction, the appellant contends the trial court committed reversible error.

■ "An appellant [is] entitled, upon timely request thereof, to an instruction from the trial court limiting the jury's consideration of the extraneous offenses to the purpose or purposes for which they were admitted." *Crank v. State,* 761 S.W.2d 328, 347 (Tex.Crim.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989). However, "it is not necessary to give a limiting instruction on an extraneous offense which constitutes a part of the res gestae of the offense for which an accused is on trial." *Luck v. State,* 588 S.W.2d 371, 376 (Tex.Crim.App.1979), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980). Further, the Texas Court of Criminal Appeals "recogniz[es] a narrow exception for sex offenses to permit admission of similar extraneous sex offenses which occurred *between the minor complainant and the accused* ... [as] relevant and probative under the 'res gestae' or context rational from which they arose." *Boutwell v. State,* 719 S.W.2d 164, 178 (Tex.Crim. App.1985) (emphasis in original).

Consequently, the extraneous sex offenses complained of in this appeal, which "occurred between the minor complainant and the accused" and which were part of the "res gestae," did not require a limiting instruction. *Boutwell,* 719 S.W.2d at 178; *Luck,* 588 S.W.2d at 376. The complaint is rejected.

■ In his final point of error, appellant argues that the trial court committed reversible error in allowing a child psychologist to testify as to whether the child com-

---

2. The appellant requested the following instruction:

You are instructed that if there is any evidence before you in this case regarding offenses other than the offense alleged against the defendant in the indictment which is before this court, then you cannot consider said testimony or evidence for any purpose, unless you find and believe beyond a reasonable doubt that such offenses were committed;

and further, that you believe beyond a reasonable doubt that if such offenses were committed, they were committed by the defendant. And then only in the event you so find you—may you consider the same only for the purposes of determining the intent of the defendant in connection with the offense alleged against him in the indictment returned here in and for no other purpose.

plainant was suffering the symptoms of a child abuse victim.

The complaint involves the testimony of child psychologist Sharon McMahon. The record reflects that after establishing considerable professional contact with the child complainant, McMahon was questioned by the prosecution as follows:

Q. And when you are talking or dealing with the sexual abuse issue, what has been her [complainant's][3] demeanor?

A. It is very difficult for her to discuss this. It took several sessions for her even to feel comfortable enough with me to even talk about it.

She has difficulty discussing this and it is very obvious in her behavior. Whereas before, she would be making good eye contact with me, and she would be engaged in spontaneous conversation. When this topic is discussed, she usually will kind of slump down and almost at times be in a fetal position, hiding her head with her hands and most times crying.

Q. And Ms. McMahon, based on your educational background and your experience in working with sexual abuse cases, can you tell us what some of the symptoms are of children that have been sexually abused?

A. Yes. There were several symptoms which [complainant] is experiencing, and what they call the damaged goods syndrome, which is where she not only feels that she has been damaged physically, but sees herself as damaged goods.

[DEFENSE]: I am sorry to interrupt, Your Honor. I would object to this testimony as being unresponsive to the question because it refers to [complainant] specifically.

The question was posed in a general term as to what patients in general— the symptoms patients in general exhibit. There was no reference to [complainant].

THE COURT: What says the State?

STATE: Your Honor, we—that was the question, is what in general are the

symptoms. And of course, my next question would be what symptoms [complainant] does have.

Q. But for now, the question is, what are the general symptoms that children have?

A. The damaging goods syndrome. They feel they have been damaged physically and psychologically where they feel that society used them, or society rejects them. Fears and excessive fears about their safety, about their own body image. Guilt about what has happened, their involvement in the sexual participation, in the sexual act; depression, suicidal thoughts and gestures, low-esteem, inability to trust significant others, withdrawal, overly complaint behavior or acting out behavior, sleep disturbance. Sometimes they experience fears of showers or going into the bathroom, or those type of symptoms.

Q. And what symptoms has [complainant] exhibited?

[DEFENSE]: Your Honor, we would object to this line of testimony, for the reason that the Court of Criminal Appeals held, I believe, that the testimony regarding the effect of sexual assaults or alleged sexual assaults is not relevant. And the case is *Brown versus State*. And I believe the cite is 757 S.W.2d 739.

[STATE]: Your Honor, we are not asking for the effect. We are asking for the symptoms this child has shown with regards to if she has these symptoms that a sexually abused child does display. We are not asking for the prognosis or anything like that.

[DEFENSE]: Well, symptoms would be the same as the effect, psychological effect I believe, Your Honor.

[STATE]: I believe I can ask her what she observed.

[THE COURT]: Objection overruled.

[DEFENSE]: Thank you.

■■■ In order to properly preserve error, an objection to the admissibility of

---

3. The child's name has been deleted to insure, to     the extent possible, some degree of privacy.

evidence cannot be general, but must be specific enough to convey to the trial court the basis for the objection. *See Bird v. State,* 692 S.W.2d 65, 70 (Tex.Crim.App. 1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986); *Harris v. State,* 565 S.W.2d 66 (Tex.Crim.App.1978). "[A] trial court is vested with the discretion to admit or exclude evidence and an appellate court should not reverse a trial court unless that court has abused its discretion in admitting the evidence at issue"; further,

> if a qualified expert offers to give testimony on whether the reaction of one child is similar to the reaction of most victims of familial child abuse, and if believed this would assist the jury in deciding whether an assault occurred, it may be admitted [as relevant] and the trial judge does not abuse his or her discretion in doing so unless the evidence otherwise fails to pass the test for admissibility.

*Duckett v. State,* 797 S.W.2d 906, 913, 917 (Tex.Crim.App.1990). However, "[t]he approach under current [TEX.R.CRIM.EVID.] Rule 403 is to *admit relevant evidence* unless the probative value of that relevant evidence is *substantially* outweighed by the danger of unfair prejudice to a defendant"; but, once the court has found such evidence relevant,

> [i]t is now incumbent upon [appellant], in view of the presumption of admissibility of relevant evidence, to ask the trial court to exclude the evidence by its authority under Rule 403, on the ground that the probative value of the evidence, assuming it is relevant apart from character conformity, is nevertheless substantially outweighed by, e.g. the danger of unfair prejudice.

*Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App.1990) (On Rehearing on Court's Own Motion on Appellant's Petition for Discretionary Review) (emphasis in original).

Further, "[i]nadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove." *Brown v. State,* 757 S.W.2d 739, 741 (Tex.Crim.App. 1988); *Anderson v. State,* 717 S.W.2d 622, 628 (Tex.Crim.App.1986).

The record reflects that the only objection made by the appellant was that the "effect of sexual assaults or alleged sexual assaults is not relevant." Although the objection was somewhat confusing because the question objected to was "what symptoms has [complainant] exhibited?" the objection, nevertheless, sufficiently conveyed a complaint as to relevance. The trial court, however, correctly overruled the objection as to relevance. *Duckett,* 797 S.W.2d at 917. Thereafter, appellant failed to request any instructions, failed to pursue the objection further by pointing out to the court why the evidence was not proper even though relevant, and thus waived any further complaint. *Montgomery,* 810 S.W.2d at 389.

Moreover, even if we were to ignore the foregoing and find the court committed error, such error would be rendered harmless because the record reflects the unobjected to testimony of other State witnesses tending to prove the same facts the objected to testimony sought to prove. *Brown,* 757 S.W.2d at 741; *Anderson,* 717 S.W.2d at 628. The point is rejected.

The judgment is affirmed.