Debra BOWSER, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–92–403–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1993.

Bill May, Corpus Christi, for appellant.

Carlos Valdez, Susan Snyder, Dist. Attorney's Office, Corpus Christi, for appellee.

Before PAUL W. NYE, Former C.J.,[1] and DORSEY and GILBERTO HINOJOSA, JJ.

## OPINION

DORSEY, Justice.

A jury found appellant guilty of murder and assessed punishment at fifty years in prison. On direct appeal, we held that error had occurred in the trial's punishment phase. We reversed the judgment and remanded the case to the trial court for a new punishment hearing. *Bowser v. State*, 816 S.W.2d 518 (Tex.App.—Corpus Christi 1991, no pet.). On remand, a second trial on punishment only was held before a jury, and punishment was assessed at life in prison. By three points of error, appellant complains the trial court erred when it sustained the State's objections to defense counsel's voir dire ex-

amination of three veniremembers, denying her the ability to intelligently exercise her peremptory strikes. We reverse and remand.

■ By points one, two, and three, appellant complains the trial court erred when it sustained the State's objections to her voir dire examination of veniremembers Flynn, Miranda, and Alaniz, denying her the ability to intelligently exercise her peremptory strikes. An accused's right to representation by counsel, guaranteed under Article 1, Section 10 of the Texas Constitution, includes counsel's right to question the members of the jury panel in order to intelligently use peremptory challenges. *Shipley v. State*, 790 S.W.2d 604, 607–08 (Tex.Crim.App.1990); *Mathis v. State*, 167 Tex.Crim. 627, 322 S.W.2d 629, 631 (App.1959). The *Mathis* Court stated that Article 1, Section 10 gives counsel the right to:

interrogate the members of the jury panel to the end that he may form his own conclusion, after his personal contact with the juror, as to whether in counsel's judgment he [the juror] would be acceptable to him or whether, on the other hand, he should exercise a peremptory challenge to keep him [the juror] off the jury. [citations omitted].

*Mathis*, 322 S.W.2d at 631.

■ As a general rule, the trial court should give an accused great latitude in questioning the jury panel during voir dire. *Trevino v. State*, 572 S.W.2d 336, 337 (Tex.Crim. App.1978); *Battie v. State*, 551 S.W.2d 401, 404 (Tex.Crim.App.1977). However, the trial court also can and should control the scope of voir dire by exercising its sound discretion to limit improper questioning. *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim.App.1985); *Beaver v. State*, 736 S.W.2d 212, 214 (Tex. App.—Corpus Christi 1987, no pet.). For instance, the trial court may restrict counsel from asking questions that are so broad and general that they amount to a "global fishing expedition," especially when counsel is allowed to direct more specific questions on the same topic to the jury panel. *See Boyd v. State*, 811 S.W.2d 105, 120 (Tex.Crim.App.

1. Former Chief Justice, retired April 30, 1993.

1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991) (proposed question "What I'm asking you is what you as a layman think is a case that is proper for the death penalty to be imposed?" held improperly broad); *Smith,* 703 S.W.2d at 645 (Court held that a question was improper when defense counsel tried to elicit jury panel's "thoughts" and "observations" on insanity defense. Court portrayed inquiry as "so broad a question as to constitute a global fishing expedition"); *Abron v. State,* 523 S.W.2d 405, 408 (Tex.Crim.App.1975) (trial court can restrict questions asked in improper form); *Bethune v. State,* 803 S.W.2d 390, 392 (Tex.App.—Houston [14th Dist.] 1990, no pet.) (proposed question "What would be some of your observations as to why I wouldn't want him to testify?" Court held question was too general and noted that counsel was allowed to question the jurors on specific reasons an accused might elect to remain silent.).

■ Appellate review of a trial court's decision to restrict voir dire is centered on whether the restriction amounted to an abuse of discretion. *Allridge v. State,* 762 S.W.2d 146, 163 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Gardner v. State,* 730 S.W.2d 675, 689 (Tex.Crim.App.1987), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). When a question is asked for the purpose of exercising peremptory challenges, the test for injury is: "If the question is proper, an answer denied prevents intelligent use of the peremptory challenge and harm is shown." *Mathis v. State,* 576 S.W.2d 835, 837 (Tex.Crim.App.1979). Therefore, to show an abuse of discretion, an accused must demonstrate that the question he or she sought to ask was proper. If the question was proper and the accused was prevented from asking it, then harm is presumed because the accused could not intelligently exercise peremptory challenges without the information gained from an answer. *Smith v. State,* 703 S.W.2d 641, 643 (Tex.Crim.App. 1985).

■ A question is proper if its purpose is to detect a juror's views on an issue applicable to the case. *McCarter v. State,* 837 S.W.2d 117, 121 (Tex.Crim.App.1992); *Ex parte McKay,* 819 S.W.2d 478, 482 (Tex. Crim.App.1990). The trial court must not restrict proper questions which seek to discover a juror's views on an issue applicable to the case. *Boyd,* 811 S.W.2d at 118; *Smith,* 703 S.W.2d at 643. The denial of a proper question during voir dire examination is always reversible error; it is not subject to a harm analysis under Tex.R.App.P. 81(b)(2). *Maddux v. State,* 862 S.W.2d 590, 592 (Tex. Crim.App.1993) (not yet reported).

■ Concerning point one, appellant calls our attention to defense counsel's voir dire examination of veniremember Nolan Richard Flynn (Veniremember No. 2).

> Counsel: Now, Mr. Flynn, you know you have to consider everything between 5 years and 99 years or life, could you tell me what some of the factors were that you think might be important in considering something like that?
>
> Flynn: Some of the factors?
>
> Counsel: Yeah. What kind of things would you look for in trying to make a decision about punishment?
>
> State: Your Honor, I'm going to object to that.

The State's attorney did not give a reason for the objection, and the trial court sustained it without comment. Counsel then asked Flynn if he would consider appellant's age as a factor in considering punishment. Flynn responded that the way he considered age "would be immaturity or immature." Counsel also asked him whether he could consider "mental status, or mentally retarded, or not retarded?" Flynn answered in the affirmative. After asking these two questions, Counsel passed Flynn as a juror.

Appellant argues that the question was proper because it sought to identify the factors Flynn thought were vital in forming a punishment decision. Appellant claims the trial court kept her from gaining knowledge about Flynn's views that would have allowed the intelligent use of her peremptory strikes.

As earlier stated, the trial court should give an accused wide latitude in questioning the jury panel during voir dire; however, the

trial court also can and should control the scope of voir dire by exercising its sound discretion to limit improper questioning. In this case, when Counsel asked Flynn "[w]hat kind of things" he would look for in trying to make a punishment decision, Counsel sought to ask an extremely broad, open-ended question.

In *Smith v. State*, 703 S.W.2d 641, 645, the Court of Criminal Appeals held the trial court did not abuse its discretion in restricting counsel from asking potential jurors a broad question about "their thoughts" on the insanity defense. Similarly in *Boyd v. State*, 811 S.W.2d 105, 120, the Court held that the inquiry of "what things" the venireperson thought were important in determining whether a person should receive the death sentence, wholly unrelated to the sentencing scheme, was improperly broad. Here, the question, "what factors would be important to the potential juror in determining punishment," was equally broad.

When Counsel was not allowed to ask the question, he was able to accomplish the same purpose by asking more narrowly tailored questions to elicit the information from Flynn. Counsel was not hindered from asking Flynn about his views on age and mental status or mental retardation as punishment considerations. We hold that the trial court did not abuse its discretion in refusing to allow that broad of question. *See Smith*, 703 S.W.2d at 645; *Bethune*, 803 S.W.2d at 392. We overrule point one.

Concerning points two and three, appellant calls our attention to Counsel's voir dire examination of veniremembers Catalina Miranda and Sylvia Alaniz (Veniremembers 3 and 5, respectively). Counsel's voir dire examination of veniremember Miranda showed:

Counsel: Ms. Miranda, when you, in considering your own views about punishment, which of the theories of punishment do you think is the most important?

State: Objection, Your Honor, I believe that's a commitment and that is improper.

Court: Sustained. Rephrase.

Counsel: Do you think that rehabilitation is more important or less important than deterrence?

State: Your Honor, I'm going to object, again, to this line of questioning, it is improper commitment. I believe he [Counsel] could ask their feelings regarding all of them.

Court: Objection is sustained, but not necessarily for the reason suggested by the prosecutor.

Counsel's voir dire examination of veniremember Alaniz showed, in relevant part:

Counsel: What I'm trying to find out is whether or not, or how much importance you [Alaniz] attached to rehabilitation of a defendant versus deterrence of other criminals, what you think is the more important purpose of punishment, and that's what I'm asking you; could you tell me which one you think is more important?

State: Your Honor, objection, it is improper to be asking which is more important.

Court: Please rephrase. Sustained.

Counsel: In assessing the punishment, do you attach more significance to the purpose of deterrence rather than the purpose of rehabilitation?

State: Your Honor, again, I object, that's just using a similar word to rephrase. He's asking for this juror to commit to what one she believes is more important. . . .

Court: Sustained.

Counsel: I'll pass the juror.

After Counsel passed Alaniz, three prospective jurors were questioned. At that point, the State informed the trial court that it had no questions for the remaining panel members. The following exchange occurred between Counsel and the trial court:

Counsel: Your Honor, the only questions I have for the rest of the panel was that question about whether or not they considered rehabilitation more important as a theory of punishment than deterrence, and I know the Count's made a ruling on that, so I will not ask.

Court: It has to do with the form of the question. I think your inquiry is appropriate....

Counsel: What I'm trying to ask the jury, the panel as a whole, I guess, Judge, is individually whether some of them attach more significance or think it is a greater importance to have deterrence versus rehabilitation, or that they think rehabilitation is more important than the longevity of, you know, the isolation issue of keeping a Defendant out of the public. I'm trying to find out whether when they come here to the courthouse, what opinions they already have in existence with regards to those purposes. And I'm only inquiring as to what the opinion is, I'm not suggesting that one opinion—that there is a wrong or right opinion, I'm only trying to find what it is.

Court: I'll let you ask about the opinion.... I'll let you ask the question about the opinion as to relative importance.

Counsel: That's the question I'm asking, Judge.

The State's posture is that the trial court reversed its earlier ruling, but that Counsel did not re-offer the questions to veniremembers Miranda or Alaniz. The State argues that since the complained-of restrictions applied to only two veniremembers, the proper standard of review is found in *Gardner v. State*, 730 S.W.2d 675 (Tex.Crim.App.1987), *cert. denied*, 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987).

■ *Gardner* was a capital-murder case, and we believe that an important distinction exists between capital and non-capital cases. In a capital case, counsel is entitled to individually voir dire the veniremembers apart from the others. TEX.CODE CRIM.PROC.ANN. art. 35.17(2) (Vernon Supp.1993). When counsel completes the individual voir dire of one veniremember, he or she knows whether that veniremember will sit on the jury, because the State first either accepts or challenges the juror. TEX.CODE CRIM.PROC.ANN. art. 35.13 (Vernon 1989). In non-capital cases and in capital cases in which the State has announced that it will not seek the death penalty, the party desiring to challenge any juror peremptorily shall strike the juror's name from the list given by the clerk. TEX. CODE CRIM.PROC.ANN. art. 35.25 (Vernon 1989). Further, we believe that even though the trial court may have reversed its earlier ruling, Counsel was not required to re-offer the questions to veniremembers Miranda or Alaniz. Thus, the issue is whether Counsel's questions were proper.

■ The purpose of voir dire is to convene a competent, fair, impartial, and unprejudiced jury to judge the facts of the case. In *Powell v. State*,[2] the accused was indicted for burglary, along with an enhancement allegation. He pleaded guilty to the charge and true to the enhancement. The jury assessed his punishment at 25 years in prison. During voir dire examination, defense counsel tried to ask a prospective juror this question, " 'With regard to my question of incarceration, Mr. Robertson, do you consider yourself a believer in the theory of deterrents [sic], punishment, or rehabilitation?' " The State objected that the question fell outside the scope of voir dire. The trial court sustained the objection and did not permit defense counsel to make similar inquiries of the remaining veniremembers.

On appeal, the accused complained that the trial court erred in preventing him from asking prospective jurors about " 'their beliefs in the underlying theories of incarceration.' " The Court of Criminal Appeals stated:

Since the appellant entered a plea of guilty, the only issue for the jury to determine was the appellant's punishment. The jury could have assessed as punishment a term of imprisonment for life or for any term of not more than 99 years or less than 5 years and, in addition, could have assessed a fine not to exceed $10,000 [footnote omitted]. Within that punishment range, the jury was free to exercise its discretion without guidance from the court. Its ultimate decision depended upon reaching a consensus based upon the personal views of the individual jurors. The appel-

2. 631 S.W.2d 169 (Tex.Crim.App.1982).

lant was entitled to know what those views were in order to intelligently exercise his peremptory challenges.

*Powell,* 631 S.W.2d at 170.

The Court held that the question concerning the jurors' punishment philosophies was proper and that the trial court abused its discretion in preventing the accused from asking it.

Similarly in *Campbell v. State,*[3] the accused pleaded guilty before a jury to aggravated sexual abuse of a child. After finding him guilty, the jury assessed punishment at life in prison and a $10,000 fine. The accused's counsel informed the prospective jurors that in a case like the one in *Campbell,* two punishment theories existed; retribution and rehabilitation. During voir dire examination, he sought to ask this question, "Would you consider retribution or rehabilitation to be the primary concern of the punishment?" The State took exception to the question, and the trial court sustained the objection. Relying on the *Powell* Court's reasoning, the Court of Criminal Appeals held that the question as phrased was a proper one.

■■■ In the present case, Counsel, in his voir dire examination of veniremember Miranda, sought to determine whether she thought that rehabilitation was more important or less important than deterrence. In his voir dire examination of veniremember Alaniz, he sought to determine what she considered more important in assessing punishment, deterrence or rehabilitation. Like the situations in *Powell* and *Campbell,* the sole issue for the jury's determination was appellant's punishment. She had pleaded guilty to murder and faced a maximum sentence of life in prison and a $10,000 fine. Within the punishment range for murder, the jury was free to exercise its discretion without the trial court's guidance. Its decision depended upon reaching a consensus based upon the personal views of the individual jurors. Appellant was entitled to know what those personal views were in order to intelligently exercise her peremptory challenges.

We hold that Counsel's questions were proper and that the trial court abused its discretion in preventing him from asking these questions. *See Campbell,* 685 S.W.2d at 25; *Powell,* 631 S.W.2d at 170.

■■■ The State argues that Counsel's inability to question veniremember Alaniz did not harm appellant because it struck her from the jury list, and she did not serve on the jury. The State relies on *Jones v. State*[4] as authority. In *Jones,* a capital-murder case, the accused complained that he was not allowed to ask a proper question during voir dire examination, preventing him from making an intelligent use of his peremptory challenges. The Court of Criminal Appeals noted that although it had held that disallowing the questioning of a prospective juror about a proper area of inquiry can never be harmless error, the Court did not reach the issue of whether the particular question was proper. The Court stated that the accused was not called upon to decide whether to exercise his peremptory challenge against the venireman since the State had already struck that venireman.

Based upon what we have already stated about the distinctions between capital and non-capital cases, we decline to follow the *Jones* case. The denial of a proper question during voir dire examination is always reversible error; it is not subject to a harm analysis under TEX.R.APP.P. 81(b)(2). *Maddux,* 862 S.W.2d at 592.

We sustain points two and three. Accordingly, we reverse the trial court's judgment and remand this cause to the court for a new punishment trial.

PAUL W. NYE, former C.J., not participating.

---

3. 685 S.W.2d 23 (Tex.Crim.App.1985).

4. 843 S.W.2d 487 (Tex.Crim.App.1992).