PD-0381-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/6/2015 3:30:36 PM
Accepted 5/7/2015 1:11:41 PM
ABEL ACOSTA
CLERK

No. PD-0381-15

_____

IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

_____

ADRIAN LEE WHITEMON

Appellant-Petitioner

vs.

THE STATE OF TEXAS

Appellee-Respondent

_____

Petition for Discretionary Review from the
Second Court of Appeals, Tarrant County
Appeal Number 02-13-00380-CR

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
May 6, 2015

_____

FILED IN
COURT OF CRIMINAL APPEALS

May 7, 2015

ABEL ACOSTA, CLERK

Lisa Mullen
Attorney at Law
3149 Lackland Road, Suite 102
Fort Worth, Texas 76116
(817) 332-8900
State Bar No. 03254375
Lisa@MullenLawOffice.com

**Oral argument requested**

## *Table of Contents*

Table of Contents……………………………………………………..ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..iii

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . ..iv

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of Procedural History . . . . . . . . . . . . . . . . . . . . . . . .....iv

Identity of Parties...............................................................................v

Grounds Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . ......1

Ground 1.………………………………………………………….....2

**THE COURT OF APPEALS ERRED IN FINDING THAT, ALTHOUGH THE TRIAL COURT ERRED IN SUSTAINING THE STATE'S STANDEFER OBJECTIONS TO THREE QUESTIONS IN VOIR DIRE, SUCH ERROR WAS HARMLESS EVEN THOUGH IT DENIED PETITIONER'S RIGHT TO INTELLIGENTLY EXERCISE HIS PEREMPTORY CHALLENGES**

Ground 2.…………………………………………………………………6

**THE COURT OF APPEALS ERRED IN THEIR INABILITY TO DETERMINE WHETHER VOIR DIRE QUESTIONS WERE IMPROPER COMMITMENT QUESTIONS DUE TO THE CONFUSION WROUGHT BY THE *STANDEFER* STANDARD**

Conclusion and Prayer for Relief.………………………………………….11

Certificate of Service.…………………………………………………………12

Certificate of Compliance.………………………………………….....12

Appendix.………………………………………………………………..13

EXHIBIT A: Second Court of Appeals' March 5, 2015, published, Opinion

EXHIBIT B: Voir Dire questions

ii

# TABLE OF AUTHORITIES

**Cases**

*Atkins v. State*, 951 S.W.2d 787 (Tex. Crim. App. 1997).................................................................. 4

*Barajas v. State*, 93 S.W.3d 36, 45 (Tex. Crim App. 2002) ............................................................. 7

*Belcher v. State*, 96 Tex. Crim. 382, 257 S.W. 1097 (1924) .......................................................... 5

*Bowser v. State*, 865 S.W.2d 482 (Tex. App. – Corpus Christi 1993, no. pet.)............................... 4

*Burress v. State*, 20 S.W.3d 179 (Tex. App. – Texarkana 2000, pet. ref'd) ................................4, 6

*Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995) ............................................................. 7

*Clemments v. State*, 940 S.W.2d 207 (Tex. App. – San Antonio 1996, pet. ref'd)........................... 5

*Connors v. United States*, 158 U.S. 408(1895)............................................................................... 5

*Contreras v. State*, 56 S.W.3d 274 (Tex. App. –Houston [14th Dist.] 2001, pet. ref'd)................... 5

*De La Rosa v. State*, 414 S.W.2d 668 (Tex. Crim. App. 1967).......................................................... 5

Delrio v. State, 840 S.W.2d 443 (Tex. Crim. App. 1992) ................................................................. 5

*Duncan v. State*, 79 Tex. Crim. 206, 184 S.W. 195 (1916) ............................................................. 5

*Everitt v. State*, 407 S.W.3d 259 (Tex. Crim. App. 2013)……………………………………….4

*Ex Parte McKay*, 819 S.W.2d 478 (Tex. Crim. App. 1990)............................................................. 4

*Franklin v. State*, 138 S.W.3d 351(Tex. Crim. App. 2004)...........................................................4, 5

*Garrett v. State*, 851 S.W.2d 853 (Tex. Crim. App. 1995)............................................................... 7

*Garza v. State*, No. 08-12-00149-CR (Tex. App. – El Paso, delivered December 19th, 2013)..................... 4

*Gonzales v. State*, 2 S.W.3d 600 (Tex. App. – Texarkana 1999, pet. ref'd)..................................4, 6

*Hernandez v. State*, 536 S.W.2d 947 (Tex. Crim. App. 1978) ......................................................... 7

*Holmes v. State*, 52 Tex. Crim. 353, 106 S.W. 1160 (1908) ........................................................... 5

*Johnson v. State*, 43 S.W.3d 1 (Tex. Crim. App. 2001) ................................................................... 5

*Linnell v. State*, 935 S.W.2d 426 (Tex. Crim. App. 1996) .............................................................. 6

*Mathis v. State*, 167 Tex. Crim. 627, 322 S.W. 2d 629 (Tex. Crim. App. 1959) ........................... 4

*McGee v. State*, 35 S.W.3d 294 (Tex. App. –Texarkana 2001, pet. ref'd) ...................................... 5

*Moore v. State*, No. 04-12-00490-CR (Tex. App. – San Antonio, delivered June 19, 2013) (not designated for publication) ............................................................................................................................ 4

*Nunfio v. State*, 808 S.W.2d 482 (Tex. Crim. App. 1991).............................................................. 7

*Rosales-Lopez v. United States*, 451 U.S. 182 (1981) .................................................................... 5

*Shiply v. State*, 790 S.W.2d 604 (Tex. Crim. App. 1990).............................................................. 4

*Standefer v. State*, 59 S.W.3d 177 (Tex. Crim App. 2001) ............................................................ 7

*Whitemon v. State*, No. 02-13-00380-CR (Tex. App. – Fort Worth, delivered March 5th, 2015 ........... *passim*

*Willkinson v. State*, 120 Tex. Crim. 284, 47 S.W.2d 819 (1932)................................................... 5

**Rules**

Rule 9.4(i)(2) of the Texas Rules of Appellate Procedure........................................................................12

Tex. R. App. Pro. 66.3..........................................................................................................................2, 6

**Treatises**

John R. Gillespie, Fear of Commitment? In Standefer v. State the Texas Court of Criminal Appeals Clarifies the Role of Commitment Questions in Jury Selection in Criminal Trials, 54 Baylor L. rev. 581, 601 (2002) ..................................................................................................................................... 7

**Constitutional Provisions**

Tex. Const., art. I, sec. 10.................................................................................................................. 4

Tex. Const., art. I, sec. 15................................................................................................................4, 5

U.S. Const., Amend VI.......................................................................................................................4, 5

U.S. Const., Amend XIV .................................................................................................................... 4

## *Statement Regarding Oral Argument*

Petitioner believes oral argument would assist this Court in the discussion and exploration of the issues presented. Because this petition presents important issues of jurisprudential value, its disposition will have significant impact on the bench and bar of the State of Texas. Therefore, Petitioner respectfully requests the opportunity to participate in oral argument in the instant case.

## *Statement of the Case*

This is an appeal from a jury trial on a two count indictment for simple Possession and Possession with Intent to Deliver a Controlled Substance of Four Grams or more, but less than 200 Grams, Namely Cocaine. CR- 5. Petitioner plead not guilty to both counts and the jury found him guilty of only the simple possession. CR- 77. After a sentencing hearing before the court, in which Petitioner's punishment was enhanced to habitual status, the judge assessed punishment at 35 years' incarceration in the Institutional Division of Texas Department of Criminal Justice. CR – 77. Petitioner timely filed written notice of appeal and the trial court certified his right of appeal. CR – 82 - 83.

## *Statement of Procedural History*

On May 6, 2014, Petitioner's brief was timely filed raising three points of error. On March 5, 2015, the Second Court of Appeals found error in the denial of three voir dire questions, but held the error harmless and denied the remaining points of error to affirm

the conviction.[1] A Motion for Rehearing was not filed. This court granted an extension of time to file this petition for discretionary review which is presently due on May 6th, 2015, and will be timely filed.

## *Identity of Parties*

1- The Honorable Ruben Gonzalez, Jr., presiding, from the 423nd District Court, Tarrant County Texas. Cause Number 1209550

2- Mr. Loyd Whelchel and Mr. Lucas Allen
Assistant District Attorney, Tarrant County
401 West Belknap
Fort Worth, Texas   76196

3- Mr. Dan Pitzer, Esq., trial counsel
204 North Main Street
Mansfield, Texas    76063

4- Mr. Adrian Lee Whitemon, Petitioner
Tulia Transfer Center
4000 Highway 86 West
Tulia, Texas   79088

5- Tarrant County District Attorney's Office, Respondent Counsel
401 West Belknap
Fort Worth, Texas    76196

---

[1] *Whitemon v. State*, No. 02-13-00380-CR (Tex. App. – Fort Worth, delivered March 5th, 2015 (Attached as Appendix Exhibit A).

# *Grounds Presented for Review*

## GROUND ONE:

**THE COURT OF APPEALS ERRED IN FINDING THAT, ALTHOUGH THE TRIAL COURT ERRED IN SUSTAINING THE STATE'S STANDEFER OBJECTIONS TO THREE QUESTIONS IN VOIR DIRE, SUCH ERROR WAS HARMLESS EVEN THOUGH IT DENIED PETITIONER'S RIGHT TO INTELLIGENTLY EXERCISE HIS PEREMPTORY CHALLENGES**

## GROUND TWO:

**THE COURT OF APPEALS ERRED IN THEIR INABILITY TO DETERMINE WHETHER VOIR DIRE QUESTIONS WERE IMPROPER COMMITMENT QUESTIONS DUE TO THE CONFUSION WROUGHT BY THE *STANDEFER* STANDARD**

## *Argument Amplifying Reasons for Granting Review*

***Ground 1*: THE COURT OF APPEALS ERRED IN FINDING THAT, ALTHOUGH THE TRIAL COURT ERRED IN SUSTAINING THE STATE'S STANDEFER OBJECTIONS TO THREE QUESTIONS IN VOIR DIRE, SUCH ERROR WAS HARMLESS EVEN THOUGH IT DENIED PETITIONER'S RIGHT TO INTELLIGENTLY EXERCISE HIS PEREMPTORY CHALLENGES**

## REASONS FOR GRANTING REVIEW

1) Review should be granted pursuant to Tex. R. App. Pro.66.3 (c)  and (a) because the court of appeals has decided an important question of state and federal law- i.e., that it is harmless to erroneously deny a proper voir dire question- in a way that conflicts with the applicable decisions of the Court of Criminal Appeals, the United States Supreme Court and other courts of appeals' decisions.

2) Review should be granted pursuant to Tex. R. App. Pro. 66.3 (f) because the court of appeals has so far departed from the accepted and usual course of judicial proceedings in their incorrect application of the law regarding harm analysis where the defense has been prevented from the intelligent exercise of peremptory challenges through the erroneous denial of the right to ask a proper question so as to call for the exercise of this Court's supervisory power.

3) Review should be granted pursuant to Tex. R. App. Pro. 66.3 (b) because the court of appeals has decided an important question of state law i.e., the denial of proper defense questions in voir dire under *Standefer* is harmless error even though it violates constitutional rights, that is an important issue that has not been, but desperately needs to be, settled and clarified by this Court.

In the instant case, trial counsel was questioned the venire regarding their ability to follow the law defining "possession" of drugs and "mere presence". R. Vol. II – 90 – 91 (Voir Dire questioning attached as exhibit B). Counsel queried:

Mr. Pitzer: Do you think a person should be guilty if they walk in a house unaware that there's controlled substances?

2

Mr. Whelchel: Objection.

The Court: I couldn't hear. Can you restate it?

Mr. Pitzer: I was asking Mr. Cassaday if he believed that a person should be guilty if he walked into a house of someone else that contained controlled substances, but I'll - - I'll rephrase that.

The Court: Your objection - - okay. He's withdrawn the question.

Mr. Pitzer: If a person walks into a house, somebody else's house and there's controlled substance in there, do you think that means they're automatically guilty?

Mr. Whelchel: Objection, improper under Standefer.

The Court: Sustained. Rephrase.

Mr. Pitzer: Do you think that the State would have to show more connection than just being in the same house with a controlled substance to find someone guilty?

Mr. Whekchel: Objection under Standefer.

The Court: Sustained. Rephrase.

Mr. Pitzer: Would you agree that the State has to show for possession that a person intentionally and knowingly had the substance or exercised control over it?

Prospective Juror: Yes.

Mr. Pitzer: Okay. The fact that there in mere proximity of it wouldn't necessarily be enough to convince you?

Mr. Welchel: Objection under Standefer.

The Court: Sustained.

R. Vol. II – 90 – 91 (attached as Exhibit B).

The lower court, in their own words "assumedly" held the following three of these questions to be proper; thus, finding the trial court erred in denying the questions:

1- If a person walks into a house, somebody else's house[,] and there's controlled substance in there, do you think that means they're automatically guilty?

2- Do you think the State would have to show more connection than just being in the same house with a controlled substance to find someone guilty?

3- The fact that the[y are] in mere proximity of it wouldn't necessarily be enough to convince you?[2]

The court then stated, " **[w]e do not need to enter the fray concerning whether the lawyers may ask questions that enable them to exercise peremptory strikes with some degree of intelligence** because even if we assume that the trial court erred by sustaining the State's objections to Appellant's … questions , we hold that such error was harmless. [3] Further, the court held that trial counsel is required to object to the court's sustaining of the state's objection in order to preserve error.[4] Thus, because counsel did not object to the court repeatedly sustaining the state's *Standefer* objection, error was waived.[5] These holdings directly ignore and conflicts with this Honorable Court's opinions, other court of appeals' opinions, longstanding Supreme Court precedent and state and federal constitutional guarantees.[6]

---

[2] *Whitemon v. State*, No. 02-13-00380-CR (Tex. App. – Fort Worth, delivered March 5th, 2015) (Attached as Appendix Exhibit A) (*emphasis supplied*).
[3] *Id.at 11*.
[4] *Id*. at 11.
[5] Interestingly enough, the court cites *Everitt v. State*, 407 S.W.3d 259 (Tex. Crim. App. 2013) for this proposition. However, *Everitt* stands for an entirely different and counter position. In *Everitt*, this Court held the lower court erred in finding no preservation of error stating, "[t]he court of appeal's parsing of Appellant's objections is the kind of hyper-technical analysis that we have repeatedly rejected."
[6] Tex. Const., art. I, sec. 10, 15; U.S. Const., Amend VI, XIV; *Burress v. State*, 20 S.W.3d 179 (Tex. App. – Texarkana 2000, pet. ref'd); *Bowser v. State*, 865 S.W.2d 482 (Tex. App. – Corpus Christi 1993, no. pet.); *Clemments v. State*, 940 S.W.2d 207 (Tex. App. – San Antonio 1996, pet. ref'd); *Gonzales v. State*, 2 S.W.3d 600 (Tex. App. – Texarkana, 1999 pet. ref'd); *Mathis v. State*, 167 Tex. Crim. 627, 322 S.W. 2d 629 (Tex. Crim. App. 1959); *Atkins v. State*, 951 S.W.2d 787 (Tex. Crim. App. 1997); *Shiply v. State*, 790 S.W.2d 604 (Tex. Crim. App. 1990); *Ex Parte McKay*, 819 S.W.2d 478 (Tex. Crim. App. 1990); *Franklin v. State*, 138 S.W.3d 351 (Tex. Crim.

4

The law is replete; an accused's state and federal rights to representation by effective counsel, due process and the right to a fair and impartial jury, includes counsel's right to question the members of the jury panel in order to intelligently use peremptory challenges.[7] This is not a 'fray' but a guarantee of constitutional magnitude. Perhaps the greatest goal of voir dire is to afford the accused the right to a fair and impartial jury, a right deeply rooted in the Sixth Amendment and indelibly attached to Due Process within the Texas constitution and decades of its jurisprudence.[8] Where a question is proper and the accused is prevented from asking it, harm is presumed because the accused could not intelligently exercise his peremptory challenges without the information gained from the answer.[9]

Voir dire is the single process by which bias and prejudice which could prevent a fair, impartial consideration of the evidence and the law, is exposed. Thus, "if a question is proper, the denial of an answer prevents the intelligent exercise of peremptory challenges and ***harm is shown***."[10] There is no requirement for counsel to further object to the court's action. To hold otherwise would render *Standefer* wholly unconstitutional in application. The lower court completely disregarded this fundamental concept of law. In this regard, it has so minimized and incorrectly applied the law regarding implicit harm as required by the state and federal

---

App. 2004); *De La Rosa v. State*, 414 S.W.2d 668 (Tex. Crim. App. 1967); *Connors v. United States*, 158 U.S. 408(1895); *Rosales-Lopez v. United States*, 451 U.S. 182 (1981).
[7] *Id.*; *Contreras v. State*, 56 S.W.3d 274 (Tex. App. –Houston [14th Dist.] 2001, pet. ref'd); *McGee v. State*, 35 S.W.3d 294 (Tex. App. –Texarkana 2001, pet. ref'd).
[8] *Id.*; U.S. Const. amend. VI; Tex. Const. art. I, sec. 15; *Franklin v. State*, 138 S.W.3d 351(Tex. Crim. App. 2004); *Duncan v. State*, 79 Tex. Crim. 206, 184 S.W. 195 (1916); *Holmes v. State*, 52 Tex. Crim. 353, 106 S.W. 1160 (1908); Delrio v. State, 840 S.W.2d 443 (Tex. Crim. App. 1992).
[9] *Id.*; *Bowser*, 865 S.W.2d at 485 – 486; *Clemments*, 940 S.W.2d at 210; *Willkinson v. State*, 120 Tex. Crim. 284, 47 S.W.2d 819 (1932); *Johnson v. State*, 43 S.W.3d 1 (Tex. Crim. App. 2001); *Belcher v. State*, 96 Tex. Crim. 382, 257 S.W. 1097 (1924) .
[10] *Id.*; *Clemments*, 940 S.W.2d at 210 (*emphasis supplied*).

constitution, case law from other courts of appeals, the United States Supreme Court and this Court as to require corrective intervention of this Court[11].

For all the foregoing reasons, the court of appeals erroneous diminished the Due Process requisites of a fair trial and the right to effective assistance of counsel in holding harmless the erroneous exclusion of proper voir dire questions requiring review and reversal of this Court. Review should further be granted because the question of whether it is harmless to deny a proper voir dire question is an important question of law decided by the court in a way that conflicts with many decisions of the Court of Criminal Appeals, the United States Supreme Court and other courts of appeals' decisions. Finally, review is most earnestly requested because the court of appeals has decided an important question of state law i.e., whether the denial of proper defense questions in voir dire under *Standefer* is harmless error, even though it violates constitutional rights, which is an important issue that has not been, but desperately needs to be, settled and clarified by this Court.

**Ground 2: THE COURT OF APPEALS ERRED IN THEIR INABILITY TO DETERMINE WHETHER VOIR DIRE QUESTIONS WERE IMPROPER COMMITMENT QUESTIONS DUE TO THE CONFUSION WROUGHT BY THE *STANDEFER* STANDARD**

## REASONS FOR GRANTING REVIEW

1)Review should be granted pursuant to Tex. R. App. Pro. 66.3 (b) because the court of appeals has decided an important question of state law i.e., what exactly is an impermissible commitment question under *Standefer*, in such a convoluted manner that it exemplifies this is an issue that has not been, but desperately needs to be, settled and clarified by this Court.

---

[11] *Id.*; See *Gonzales v. State*, 2 S.W.3d 600 (Tex. App. – Texarkana 1999, pet. ref'd); *Linnell v. State*, 935 S.W.2d 426 (Tex. Crim. App. 1996); *Burress v. State*, 20 S.W.3d 179 (Tex. App. – Texarkana 2000, pet. ref'd).

2)Review should be granted pursuant to Tex. R. App. Pro.66.3 (c)  and (a) because the court of appeals has decided an important question of state and federal law- i.e., what really is an erroneous *Standefer* commitment question - in a way that conflicts with the applicable decisions of the Court of Criminal Appeals and other courts of appeals' decisions.

3)Review should be granted pursuant to Tex. R. App. Pro. 66.3 (f) because the court of appeals has so far departed from the accepted and usual course of judicial proceedings in their incorrect application of the law of *Standefer* so as to call for the exercise of this Court's supervisory power.

   In *Standefer v. State*, this Court, in a 5-4 decision with two judges concurring, attempted to simplify the practice of deciding which types of commitment questions are proper[12]. Despite best intentions, the opinion ultimately, and in real world application, has exacted quite the opposite effect. The *Standefer* test has simply generated complete confusion and, thereby, the deprivation of constitutional rights.[13]

   In the instant case, the court of appeals quite literally "presumably" finds three of the questions defense counsel proffered in voir dire to ***not be*** improper commitment questions under *Standefer*.[14] However, because it is extremely difficult to discern the lower court's quite convoluted reasoning as to why the questions do or do not meet the *Standefer* criteria, it is

---

[12] *Standefer v. State*, 59 S.W.3d 177 (Tex. Crim App. 2001).
[13] See *Standefer v. State*, 59 S.W.3d at 185 (Price, J., dissenting) and at 187 (Johnson, J., joined by Meyers, Price, & Holcomb, JJ., dissenting); *Standefer*, 59 S.W.3d at 183 n. 28; *Hernandez v. State*, 536 S.W.2d 947 (Tex. Crim. App. 1978); *Barajas v. State*, 93 S.W.3d 36, 45 (Tex. Crim App. 2002) (overruling *Nunfio v. State*, 808 S.W.2d 482 (Tex. Crim. App. 1991) (Meyers & Holcomb, JJ., dissenting); *Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995); *Garrett v. State*, 851 S.W.2d 853 (Tex. Crim. App. 1995);  John R. Gillespie, Fear of Commitment? In Standefer v. State the Texas Court of Criminal Appeals Clarifies the Role of Commitment Questions in Jury Selection in Criminal Trials, 54 Baylor L. rev. 581, 601 (2002)(Nunfio decision 'set forth an unworkable standard that provided no reasonable limitation on the parties' ability to ask questions").
[14] *Whitemon v. State*, No. 02-13-00380-CR (Tex. App. – Fort Worth, delivered March 5th, 2015) (Opinion attached as Exhibit A)

difficult to even know what the courts' actual findings were. In this regard, the lower court's

opinion bears testament to the mass confusion wrought by *Standefer* and its progeny.[15]

The lower court stated as to the question "If a person walks into a house, somebody else's

house[,] and there's controlled substance in there, do you think that means they're automatically

guilty?" :

> We cannot say that this is a question that seeks to commit a juror improperly to a specific set of facts or, that is, to treating a specific set of facts in a particular way. It appears to be a question about mere presence. … It may, however, run afoul of the prohibition against asking how a juror will respond to the specific facts of the case at bar. … The question may inquire about venire member's reaction to the specific facts of this case rather than his ability to follow the law, as discussed in *Atkins*.[16]

This reasoning reflects the fundamental confusion and misunderstanding and, thereby

misapplication, that plagues the *Standefer* standard and is exhibited by the vast majority of

litigants and judges throughout this state.[17]The lower court appears to honestly not know whether

this question is improper under *Standefer*; thus, it surmises it "may" run afoul or "may" inquire

of fact as forbidden by *Atkins*.[18]  It goes on to simply "assume" the trial court erred in sustaining

the prosecutor's *Standefer* objection. [19]

As to the second question, " [d]o you think that the State would have to show more

connection than just being in the same house with a controlled substance to find someone

guilty?" the court's entire reasoning was as follows:

---

[15] See note 11.
[16] *Whitemon v. State*, No. 02-13-00380-CR (Tex. App. – Fort Worth, delivered March 5th, 2015) (Attached as Appendix Exhibit A).
[17] See note 11.
[18] *Whitemon v. State*, No. 02-13-00380-CR (Tex. App. – Fort Worth, delivered March 5th, 2015) (Attached as Appendix Exhibit A).
[19] *Id.*

> This is a closer inquiry, because the question includes the fact that the contraband is in a habitation but also an inquiry into the law upon which Appellant was entitled to rely: mere presence is not sufficient to support conviction.[20]

Although the court finds this a "closer inquiry", the questions remains; is it a proper or improper question under *Standefer*? The court never explains further. Once again, this bears testament to the instant court's, as well as numerous others, who are left drifting in a sea of confusion as to a workable understanding and application of the *Standefer* standard.[21]

Lastly, as to the question "The fact that the[y are] in mere proximity of it wouldn't necessarily be enough to convince you?", the court reasoned,

> This final question does not inquire whether the venire can follow the law. Rather, this question asks what it would take to convince the venire member in the case at bar. This question therefore improperly inquires into how the venire member would treat the evidence expected to be presented at trial.[22]

Once again, this is the sum total of the legal reasoning of the court. Although it appears the court is finding this an improper commitment question, the court does not state so. Nor does the court properly address the *Standefer* criteria in application and wholly ignores the issue of whether the question includes facts that lead to a proper challenge for cause. Nonetheless, the court then goes on to perplexingly "assume" the trial court erred in sustaining the state's objection.[23]

The sheer confusion in the court's analysis reinforces the fact the *Standefer* rule is too complex and unworkable in application, so much so, the bench and bar alike are left awash in conflict and misapplication.[24]  It is well time this Honorable Court addresses this issue and

---

[20] *Id.*
[21] See note 11.
[22] *Id.*
[23] *Id.*
[24] See note 11.

revisit *Standefer* and its progeny to create a workable, bright-line rule for proper voir dire questions.

Further, and of greatest importance, the very fact *Standefer* evokes such immense confusion in application as to what questions are permissible constantly jeopardizes constitutional rights.[25] The right to a fair and impartial jury is deeply rooted in the efficacy of the voir dire process and the right to querie prospective jurors in order to intelligently exercise peremptory strikes and challenges for cause. This process is wholly vulnerable to counsels' ability to competently question jurors. When both bench and bar are continuously, fundamentally confused as to what questions are proper, the result is a process fraught with conflict, mistakes and injustice.

For all the foregoing reasons, this petition for discretionary review should be granted. The court of appeals erred in their inability to discern whether voir dire questions were improper commitment questions due to the confusion caused by the *Standefer* standard. This is an immensely important question of law that has caused continuously conflicting case law, court rulings and trial objections and resulted in constitutional infringements and, as such, is an issue that desperately needs to be addressed, settled and clarified by this Court. Lastly, review should be granted because the court of appeals has so far departed from the accepted and usual course of judicial proceedings in their incorrect application of the law of *Standefer* so as to call for the exercise of this Court's supervisory power.

---

[25] See notes 4, 6 & 11.

### *Conclusion and Prayer for Relief*

**WHEREFORE, ALL PREMISES CONSIDERED**, petitioner respectfully prays this Court grant review and, after a full briefing on the merits, issue an opinion resolving this important issue so that the bench and bar of this state will know how to address similar issues in the future as well as reverse the Second Court of Appeals' findings of harmless error. Appellant additionally prays for such other and further relief as he may show himself deserving, at law and in equity.

Respectfully submitted,

*Lisa Mullen*

/s/ Lisa Mullen
Attorney at Law
3149 Lackland Road, Suite 102
Fort Worth, Texas 76116
(817) 332-8900
State Bar No. 03254375
Lisa@MullenLawOffice.com

11

## *Certificate of Service*

I hereby certify that a true copy of this document was served on May 6th, 2015, by mail delivery upon Assistant District Attorney Charles Mallin, Appellate Section, Tarrant County District Attorney's Office, 401 West Belknap, Fort Worth, Texas 76104, and by mail delivery upon the Office of the State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711.

*Lisa Mullen*
_____
/s/ Lisa Mullen
Attorney at Law

## *CERTIFICATE OF COMPLIANCE*

I, Lisa Mullen, pursuant to Rule 9.4(i)(2)(D) of the Texas Rules of Appellate Procedure, do hereby certify the word count of the applicable portions of this Petition for Discretionary Review is 4,395 words and within the 4,500 word limit as required by the rules.

*Lisa Mullen*
_____
/s/ Lisa Mullen
Attorney at Law
3149 Lackland Road, Suite 102
Fort Worth, Texas 76116
(817) 332-8900
State Bar No. 03254375
Lisa@MullenLawOffice.com

# APPENDIX

# EXHIBIT A



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-13-00380-CR

ADRIAN LEE WHITEMON                                     APPELLANT

V.

THE STATE OF TEXAS                                           STATE

----------

## FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1209550D

----------

## OPINION

----------

A jury convicted Appellant Adrian Lee Whitemon of possession of four or more grams of cocaine but less than 200 grams. The trial court found the enhancement paragraph to be true and sentenced him to thirty-five years' confinement. In three points, Appellant contends that the trial court erred by improperly limiting his voir dire questions, by denying his motion to suppress the arrest-and-search warrant, and by admitting evidence of his prior bad acts.

Because the trial court committed no reversible error, we affirm the trial court's judgment.

**Motion to Suppress**

The police executed a no-knock search-and-arrest warrant and found drugs, money, and several people, including Appellant, inside the apartment. In his second point, Appellant contends that the trial court erred by denying his motion to suppress the search-and-arrest warrant and by admitting the evidence obtained via the warrant. He argues that although the warrant contained a description of "Cush" or "Kush," the person to be arrested, the supporting affidavit contained no description, not even a statement of the gender of the person to be arrested. In addition to arguing that the warrant fails for lack of specificity, Appellant also argues that it fails for lack of corroboration.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[1] We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.[2]

---

[1]*Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[2]*Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.[3]

In assessing the sufficiency of an affidavit for an arrest warrant or search warrant, the reviewing court is limited to the four corners of the affidavit.[4] The reviewing court should interpret the affidavit in a common sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences.[5] We must defer to the magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for his conclusion.[6]

Appellant points out that article 15.02 of the Texas Code of Criminal Procedure requires an arrest warrant to "specify the name of the person whose arrest is ordered, if it be known, if unknown, then some reasonably definite description must be given."[7] Further, as both sides note, the law is well established that information provided by an informant must contain some indicia

---

[3]*State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

[4]*Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993).

[5]*Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

[6]*Rodriguez v. State*, 232 S.W.3d 55, 64 (Tex. Crim. App. 2007).

[7]Tex. Code Crim. Proc. Ann. art. 15.02 (West 2005).

of reliability or be reasonably corroborated by police before it can be used to justify a search.[8]

In denying the motion to suppress, the trial court made oral findings of fact and conclusions of law:

> All right. After reviewing State's Exhibit No. 1 and hearing testimony and cross-examination, the Court, after doing so, concludes as a matter of law and matter of fact that the Defendant's motion fails.
>
> The warrant does establish probable cause that at 2377 Dalworth, Apartment 235, Grand Prairie Texas, Tarrant County, . . . Texas, that Grand Prairie police officers did have probable cause to request and secure a warrant for that location on the basis that the information that's contained therein, upon which the officers went into the location and made a number of discoveries that have been identified as State's Exhibit 2 through 18, inclusively, and State's Exhibit 22 that have been submitted and received as conditional.
>
> Still relying on other additional information that still needs to be brought forward, it's still the conclusion of the Court that the information, the evidence obtained therein, is admissible and was done in conformity of the Fourth and Fourteenth Amendments of the United States Constitution, Article 1, Section 9 of the State Constitution.
>
> Therefore, the Defendant's motion should be and is hereby denied.
>
> Are there any additional findings of fact and conclusions of law, State?
>
> [Prosecutor]: And that all items that were seized from that apartment on that date and time are admissible as a matter of law and fact.

---

[8]*Illinois v. Gates*, 462 U.S. 213, 242, 103 S. Ct. 2317, 2334 (1983).

4

THE COURT: That is correct. And that's why I identified them specifically. If there are additional items that you intend to offer that were not—have not been presented to the Court thus far, that would also be admissible and that they were collected lawfully.

The search-and-arrest warrant was based on two affidavits. The first affidavit included the name Kush or Cush and a physical description of this person: "B/M 5'2"–5'5" 145–60 lbs, BLK/BRO, Tear drop tattoos on near right eye and multiple tat[t]oos all upper torso and arms." This is a "reasonably definite description" under article 15.02.[9]

The affidavits show that the police used their informant to make two controlled buys. Their information was that Cush or Kush was selling crack cocaine out of the apartment. One affidavit contains the statement that the confidential informant had, in the past, provided information that "ha[d] led to the execution of several narcotic search warrants and the arrest of several narcotic dealers within the city limits of Grand Prairie." The affidavit also describes the procedure that the police used for sending the informant to make the controlled buys. Thus, the affidavits provide some indicia of reliability of the informant. Based on the contents of both affidavits and applying the appropriate standard of review,[10] we hold the affidavits sufficient to support the trial court's probable

---

[9]*See* Tex. Code Crim. Proc. Ann. art. 15.02; *Walthall v. State*, 594 S.W.2d 74, 80–81 (Tex. Crim. App. [Panel Op.] 1980).

[10]See *Gates*, 462 U.S. at 242, 103 S. Ct. at 2334; *Moreno v. State*, 415 S.W.3d 284, 287 (Tex. Crim. App. 2013).

cause finding and sufficient to support the challenged warrant. The trial court therefore did not err by denying Appellant's motion to suppress. Because of our conclusion that the trial court properly denied Appellant's motion to suppress, we do not address the State's contention that Appellant lacked standing to challenge the police entry into the apartment he claimed to be merely visiting.[11] We overrule Appellant's second point.

**Limitations on Voir Dire**

In his first point, Appellant argues that the trial court abused its discretion by preventing the defense from asking proper voir dire questions. In *Standefer v. State*,[12] a 5-4 decision with two judges concurring with the majority, the Texas Court of Criminal Appeals held,

> [A] question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question.
>
> . . . .
>
> [F]or a commitment question to be proper, one of the possible answers to that question must give rise to a valid challenge for cause.[13]

Before *Standefer*, the emphasis was not on whether the question was a commitment question but on whether the commitment was to treat the facts of

---

[11]*See* Tex. R. App. P. 47.1.

[12]59 S.W.3d 177, 180 (Tex. Crim. App. 2001).

[13]*Id. at* 180–82.

the specific case on trial in a particular manner. Additionally, the law recognized that a legitimate purpose of posing voir dire questions was not solely to seek grounds for valid challenges for cause, but also to enable the litigant to intelligently exercise peremptory challenges. As our sister court in San Antonio explained almost twenty years ago,

> A voir dire question is proper if its purpose is to discover a venire member's view on an issue applicable to the case. Voir dire is intended to expose bias or prejudice which might prevent full and fair consideration of the evidence to be presented at trial. Therefore, if a question is proper, the denial of an answer prevents the intelligent exercise of peremptory challenges and harm is shown.[14]

And four years before *Standefer*, the Texas Court of Criminal Appeals explained in *Atkins v. State*,[15]

> In *Shipley*,[16] we held that control of the voir dire examination is within the sound discretion of the trial judge and that the trial judge is given wide discretion in this area. Although this is true, a trial judge must not exceed his discretion by denying a proper question or allowing an improper question. And in a case such as this, a trial judge must determine if the hypothetical is used to explain the law or to commit the venire to specific facts of the case. To find that the question was used for anything other than to explain the law would be an abuse of discretion and would constitute reversible error.[17]

---

[14]*Clemments v. State*, 940 S.W.2d 207, 210 (Tex. App.—San Antonio 1996, pet. ref'd) (citing *Ex parte McKay*, 819 S.W.2d 478, 482 (Tex. Crim. App. 1990)).

[15]951 S.W.2d 787, 790 (Tex. Crim. App. 1997).

[16]*Shipley v. State*, 790 S.W.2d 604 (Tex. Crim. App. 1990).

[17]*Atkins*, 951 S.W.2d at 790.

7

In *Atkins*, a case in which a defendant was being tried for possession of a residue amount of cocaine found in a crack pipe, the questions were, "Is there anybody who would be unable to convict somebody for possession of a residue amount of cocaine . . . ?" and "Is there anyone who would be unable to convict in this type of circumstance?"[18]  The *Atkins* court held,

> This type of questioning, using a hypothetical or otherwise, is improper and serves no purpose other than to commit the jury to [a] specific set of facts prior to the presentation of any evidence at trial.[19]

In the case now before this court, Appellant asked the following questions:

**1. If a person walks into a house, somebody else's house[,] and there's [a] controlled substance in there, do you think that means they're automatically guilty?**

We cannot say that this is a question that seeks to commit a juror improperly to a specific set of facts or, that is, to treating a specific set of facts in a particular way.  It appears to be a question about mere presence:

> [W]hen the theory of prosecution is that the accused or another acted together in possessing a narcotic drug, the evidence must affirmatively link the accused to the contraband in such a manner that it can be concluded that he had knowledge of the contraband as well as control over it.  Mere presence alone at a place where the contraband is being used or possessed by others does not justify a finding of joint possession, or constitute one a party to an offense.[20]

---

[18]*Id.* at 789.

[19]*Id.*

[20]*Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988) (citations omitted).

8

It may, however, run afoul of the prohibition against asking how a juror will respond to the specific facts of the case at bar. Appellant's defense was that he walked into someone else's apartment where drugs were found, that he was merely present when the police arrived, and that he did not knowingly or intentionally exercise care, custody, or control over the contraband. The question may inquire about the venire member's reaction to the specific facts of this case rather than his ability to follow the law, as discussed in *Atkins*.[21]

> **2.** **Do you think that the State would have to show more connection than just being in the same house with a controlled substance to find someone guilty?**

This is a closer inquiry, because the question includes the fact that the contraband is in a habitation but is also an inquiry into the law upon which Appellant was entitled to rely: mere presence is not sufficient to support conviction.[22]

> **3.** **Would you agree that the State has to show for possession that a person intentionally and knowingly had the substance or exercised control over it?**

This question is a commitment question, but it is also a statement of the law upon which Appellant was entitled to rely.[23] As the *Standefer* court explained,

---

[21] *See Atkins*, 951 S.W.2d at 789–90.

[22] *See id.*; *Martin*, 753 S.W.2d at 386.

[23] *See Atkins*, 951 S.W.2d at 789–90; *Martin*, 753 S.W.2d at 386.

9

> [T]he inquiry for improper commitment questions has two steps: (1) Is the question a commitment question, and (2) Does the question include facts—and only those facts—that lead to a valid challenge for cause? If the answer to (1) is "yes" and the answer to (2) is "no," then the question is an improper commitment question, and the trial court should not allow the question.[24]

Under the *Standefer* test, the question properly inquires into the venire member's ability to follow the law on which Appellant was entitled to rely without injecting specific facts of the case into the inquiry and could lead to a challenge for cause.[25] Appellant was allowed to ask this question, and the prospective juror answered, "Yes." Appellant does not complain that he wanted to ask that question of other members of the venire.

**4.     Okay. The fact that the[y are] in mere proximity of it wouldn't necessarily be enough to convince you?**

This final question does not inquire whether the venire can follow the law. Rather, this question asks what it would take to convince the venire member in the case at bar. This question therefore improperly inquires into how the venire member would treat the evidence expected to be presented at trial.[26]

We do not need to enter the fray concerning whether the lawyers may ask questions that enable them to exercise peremptory strikes with some degree of intelligence because even if we assume that the trial court erred by sustaining

---

[24] *Standefer*, 59 S.W.3d at 182–83.

[25] *See id.*

[26] *See id.*; *Atkins*, 951 S.W.2d at 789–90.

10

the State's objections to Appellant's first, second, and fourth questions set out above, we hold that such error was harmless.

Appellant argues that by sustaining the objections to his first, second, and fourth questions, the trial court violated his constitutional rights to counsel, to be heard, to a trial by a fair and impartial jury, and to due process. He does not, however, direct us to any portion of the record at which he raised these constitutional claims before the trial court. They are therefore not preserved.[27] Appellant also argues that the voir dire error alleged is of constitutional magnitude. The Texas Court of Criminal Appeals, however, instructs us to consider this type of voir dire error nonconstitutional error under rule of appellate procedure 44.2(b).[28] We therefore apply rule 44.2(b) and disregard the error if it did not affect Appellant's substantial rights.[29]

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[30] Conversely, an

---

[27] *See* Tex. R. App. P. 33.1(a); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd).

[28] *Sanchez v. State*, 165 S.W.3d 707, 713 (Tex. Crim. App. 2005); Tex. R. App. P. 44.2(b).

[29] *See* Tex. R. App. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[30] *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."[31] In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case.[32] We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable.[33]

Even if the trial court erred in sustaining the State's objections to the first, second, and fourth questions set out above, the error was harmless beyond a reasonable doubt, based on the record before us. An inability to ask those three questions did not have substantial and injurious effect or influence in determining the jury's verdict, nor did it prevent Appellant's access to information necessary for a proper challenge for cause. All four questions before us dealt with the venire's ability to properly apply the law of mere presence. The third question was allowed to be asked and answered; it inquired into the venire's ability to

---

[31]*Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

[32]*Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

[33]*Id.* at 355–56.

12

properly apply the law of mere presence. Nothing in the record suggests that Appellant was prohibited from asking this question of other members of the venire individually.

We overrule Appellant's first point.

**Extraneous Bad Acts**

In his third point, Appellant argues that the trial court abused its discretion in the guilt phase by admitting evidence of his "extraneous bad acts concerning [his] statement to a bond officer." An appellate court reviews a trial court's decision to admit evidence for an abuse of discretion.[34] A trial court abuses its discretion in admitting evidence if that decision falls outside the wide zone of reasonable disagreement.[35]

Appellant's defense at trial was that he was merely a visitor at the apartment and that none of the cocaine found there belonged to him. The bond officer testified on rebuttal that Appellant had said that his drug of choice was cocaine. Although this testimony is clearly prejudicial (why else would the State have offered it in rebuttal), the question is whether it is unfairly prejudicial.[36] As the State correctly argues, any theoretical unfair prejudice did not outweigh the

---

[34]*Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

[35]*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

[36]*Wheeler v. State*, 67 S.W.3d 879, 888–89 (Tex. Crim. App. 2002).

probative value of the testimony, in light of Appellant's defense that he did not knowingly or intentionally possess the cocaine found in the apartment.[37] The State was required to prove intentional and knowing possession, and the case was a circumstantial evidence case. The bond officer's testimony was brief and to the point. It directly attacked Appellant's defense and directly supported the State's theory of the case. The testimony was not likely to have confused the jury or to cause the jury to wrongfully convict Appellant.[38] Additionally, as the State argues, the statement is Appellant's own, an admission by a party opponent[39] as well as an admission against penal interest.[40] We therefore hold that the probative value of the statement was not substantially outweighed by the danger of unfair prejudice.[41] Consequently, the trial court did not abuse its

---

[37]*See Owen v. State*, No. 02-03-00164-CR, 2004 WL 966323, at *6 (Tex. App.—Fort Worth May 6, 2004, no pet.) (mem. op., not designated for publication) (holding evidence that Owen had previously received drugs via Fedex and had previously possessed methamphetamine admissible rebuttal evidence to show current knowing and intentional possession of Fedex package containing methamphetamine in face of her denial).

[38]*See Maranda v. State*, 253 S.W.3d 762, 768 (Tex. App.—Amarillo 2007, pet. dism'd) (holding evidence of drug use following aggravated robbery relevant to defendant's motive to commit robbery and that it did not confuse jury or lead them to wrongly convict and took minimal time to develop).

[39]*See* Tex. R. Evid. 801(E)(2).

[40]*See* Tex. R. Evid. 803(24).

[41]*See* Tex. R. Evid. 403.

discretion by admitting Appellant's statement to the bond officer, and we overrule Appellant's third point.

**Conclusion**

Having overruled Appellant's three points, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

WALKER, J., concurs without opinion.

PUBLISH

DELIVERED:  March 5, 2015

15

# EXHIBIT B

15

it's been improperly seized and not obtained by consent or probable cause. So, for instance, if you believed a search warrant was --

MR. WHELCHEL: Judge, I'm going to object. That's going to be a misstatement of the law. That isn't the state of the law. That's going to be a question of law for you to decide. A jury's never going to receive an instruction on a search warrant.

THE COURT: Sustained.

MR. PITZER: Do you think a person should be guilty if they walk in a house unaware that there's controlled substances?

MR. WHELCHEL: Objection.

THE COURT: I couldn't hear. Can you restate it?

MR. PITZER: I was asking Mr. Cassady if he believed that a person should be guilty if he walked into a house of someone else that contained controlled substances, but I'll -- I'll rephrase that.

THE COURT: Your objection -- okay. He's withdrawn the question.

MR. PITZER: If a person walks into a house, somebody else's house and there's controlled substance in there, do you think that means they're automatically guilty?

MR. WHELCHEL: Objection, improper under Standefer.

THE COURT: Sustained. Rephrase.

MR. PITZER: Do you think that the State would have to show more connection than just being in the same house with a controlled substance to find someone guilty?

MR. WHELCHEL: Objection under Standefer.

THE COURT: Sustained. Rephrase.

MR. PITZER: Would you agree that the State has to show for possession that a person intentionally and knowingly had the substance or exercised control over it?

PROSPECTIVE JUROR: Yes.

MR. PITZER: Okay. The fact that there in mere proximity of it wouldn't necessarily be enough to convince you?

MR. WHELCHEL: Objection under Standefer.

THE COURT: Sustained.

MR. PITZER: Outside of what Mr. Allan's already covered, that's pretty much all I wanted to touch base with all of y'all.

Is there anybody here that has any reason that they think they couldn't sit as a fair and impartial juror in this case?